[No. S012342. Apr. 18, 1991.]

WILLIAM EDWARD DIX, Petitioner, v.
THE SUPERIOR COURT OF HUMBOLT COUNTY, Respondent;
THE PEOPLE et al., Real Parties in Interest.

COUNSEL

Bernard C. DePaoli for Petitioner.

No appearance for Respondent.

John K. Van de Kamp and Daniel E. Lungren, Attorneys General, Steve White, Arnold O. Overoye and Richard B. Iglehart, Chief Assistant Attorneys General, John H. Sugiyama, Assistant Attorney General, Aileen Bunney, Laurence K. Sullivan, Morris Beatus and Enid A. Camps, Deputy Attorneys General, Fern M. Laetham, State Public Defender, and Philip M. Brooks, Deputy State Public Defender, for Real Parties in Interest.

## OPINION

BAXTER, J.—Alan Dale Bradley was convicted of aggravated assault and sentenced to prison. Thereafter, the superior court invoked Penal Code section 1170, subdivision (d) (hereafter section 1170(d)),[1] to recall Bradley's sentence. Petitioner William Edward Dix, the victim of Bradley's assault, sought mandate or prohibition to overturn the recall order and prevent substitution of a new sentence. Petitioner argued that section 1170(d) permits recall and resentencing only under limited circumstances not present in Bradley's case.

The Court of Appeal issued a peremptory writ of mandate. It held that petitioner had standing to litigate the sentencing issue as a matter of "public

[1] All further statutory references are to the Penal Code unless otherwise indicated.

interest." On the merits, it agreed that section 1170(d) provided no authority for the trial court's action.

We conclude that the Court of Appeal erred in both respects. Neither a crime victim nor any other member of the public has general standing to intervene in an ongoing criminal proceeding against another person. Furthermore, section 1170(d) does not limit a sentencing court to correction of a "disparate" sentence, as the Court of Appeal majority suggested. Instead, the statute allows the court to recall a sentence within the pertinent time limits, and then to resentence, for any reason that could influence the exercise of sentencing discretion generally, including events which have occurred since the original sentence was imposed. We will therefore reverse the judgment of the Court of Appeal.

FACTS

Bradley was charged with attempting to murder petitioner. At the January 1988 preliminary hearing, the evidence indicated that Bradley entered the Arcata house where petitioner was living, brandished a pistol, and demanded $60 petitioner owed "Dave" in a drug deal. Petitioner refused to give Bradley the money, the two men went outside, and Bradley shot petitioner in the head.

An information was filed in Humboldt County Superior Court charging Bradley with assault with a firearm. (§ 245, subd. (a)(2).) The information also alleged that Bradley personally and intentionally inflicted great bodily injury on petitioner. (§§ 1203, subd. (e)(3), 12022.7.)

On March 4, 1988, Bradley pled guilty to the firearm-assault charge and admitted the allegation of great bodily injury. The court, Judge Brown presiding, immediately sentenced Bradley to state prison. The court imposed the upper term of four years for the aggravated assault, and an additional three-year enhancement for the great bodily injury, for a total term of seven years.[2]

On June 24, 1988, 118 days after sentencing, the court recalled the sentence on its own motion pursuant to section 1170(d).[3] Bradley was returned

---

[2] Immediate sentencing occurred at Bradley's insistence, even though petitioner, the victim, had not been notified and was not present to express his views, as required by section 1191.1 (part of "The Victims' Bill of Rights" enacted by the voters at the June 1982 Primary Election). The court and counsel agreed that since the maximum sentence was being imposed, petitioner's rights were not prejudiced by his absence.

[3] Section 1170(d) provides in pertinent part that "[w]hen a defendant . . . has been sentenced to be imprisoned in the state prison and has been committed to the custody of the Director of Corrections, the court may, within 120 days of the date of commitment on its own

from prison to the Humboldt County jail. Resentencing was thereafter continued from time to time. In July 1988, Bradley was transferred to the custody of the Shasta County Sheriff's Department. Thereafter, both the Humboldt and Shasta County Superior Courts issued orders further continuing resentencing from time to time. Bradley was temporarily released on his own recognizance, but has since been returned to jail custody. He has never been resentenced for his assault on petitioner.

The reasons for this treatment of Bradley, though not contained in any official record, are not essentially disputed by the parties. The District Attorney of Shasta County sought to prosecute Phil Kellotat, a reputed drug kingpin, for hiring the murder of Vince Capitan. At the last minute, Capitan's assassin refused to provide crucial testimony against Kellotat, forcing one dismissal of the murder-for-hire prosecution. Bradley, already serving his assault sentence, told the authorities that Kellotat had previously hired him to kill Capitan. Bradley said he would so testify if his sentence for assaulting petitioner could be changed to "local (i.e., county jail) time."

At the Shasta County prosecutor's request, and with the consent of the Humboldt County District Attorney, Judge Brown therefore agreed to recall Bradley's sentence on his own motion, and to delay resentencing pending Bradley's testimony in the Kellotat case. In order to spare Humboldt County the costs of Bradley's interim custody, Shasta County apparently accepted a transfer of custody to its jail.[4]

In February 1989, petitioner wrote Judge Brown to express alarm that Bradley had been recalled from prison and released. Petitioner referred to Bradley's extensive felony record and stated that Bradley had displayed a threatening note during petitioner's testimony in the assault case.

Petitioner subsequently retained counsel who assisted him in further unsuccessful attempts to have Bradley immediately returned or resentenced to prison. On February 24, 1989, petitioner's counsel appeared at a scheduled

---

motion, or at any time upon the recommendation of the Director of Corrections or the Board of Prison Terms, recall the sentence . . . and resentence the defendant in the same manner as if he or she had not previously been sentenced, provided the new sentence, if any, is no greater than the initial sentence. The resentence under this subdivision shall apply the sentencing rules of the Judicial Council so as to eliminate disparity of sentences and to promote uniformity of sentencing. Credit shall be given for time served."

[4] As the Court of Appeal majority noted, "[b]oth petitioner and the People have filed . . . declarations to explain the circumstances giving rise to their conduct and respondent court's actions. There is no record to show these facts were before the trial court and no means of verifying the accuracy of much of the material. . . ." We mention these nonrecord matters because the parties generally agree about the reasons for the recall but dispute whether these reasons were permissible grounds for the trial court's action under section 1170(d).

status hearing before Judge Lund; over counsel's objection, resentencing was further continued at the request of the Shasta County District Attorney.

On March 3, 1989, petitioner filed this application for prohibition and/or mandamus in the Court of Appeal. The petition sought to prevent the Humboldt County Superior Court from further continuing Bradley's resentencing, and to require Bradley's immediate return to prison to serve the original term.

The Court of Appeal issued an alternative writ. On July 26, 1989, the appellate court filed its decision ordering issuance of a peremptory writ. Rehearing was granted to allow briefing by Bradley, who had not previously been represented in the proceeding.

On February 28, 1990, the Court of Appeal again ordered issuance of a peremptory writ of mandate, directing the Humboldt County Superior Court to vacate its recall order and to return Bradley to prison forthwith. The majority concluded that section 1170(d) permits recall only to correct a sentencing disparity and does not allow resentencing on the basis of events which occurred after the original sentence was imposed. The majority further ruled that petitioner had "public interest" standing to enforce these limits on the trial court's recall and resentencing authority. Justice Poché dissented on both points. We granted review at the request of the People and Bradley, real parties in interest (hereafter collectively referred to as real parties).

DISCUSSION

1. *Standing.*

■ We conclude at the outset that petitioner, who is not a party to Bradley's criminal case, has no standing to challenge the application of section 1170(d) to Bradley's sentencing. This extraordinary writ proceeding falls within the general rule that neither a crime victim nor any other citizen has a legally enforceable interest, public or private, in the commencement, conduct, or outcome of criminal proceedings against another.

Mandate lies to compel the performance of official duty (Code Civ. Proc., § 1085), and prohibition to restrain judicial acts in excess of jurisdiction (*id.*, § 1102), where there is no adequate legal remedy. Ordinarily, the writs will be issued only to persons who are "beneficially interested." (*Id.*, §§ 1086, 1103; *Parker* v. *Bowron* (1953) 40 Cal.2d 344, 351 [254 P.2d 6] [protection of the petitioner's "substantial right"].)

Petitioner argued in the Court of Appeal that he had a "beneficial interest" in Bradley's proper confinement because he was the victim of Bradley's crime and because Bradley had threatened to harm him further. The majority sidestepped this claim of private or personal interest by invoking the principle that " ' "where the question is one of *public* right and the object of the mandamus is to procure the enforcement of a *public* duty, the relator need not show that he has any legal or special interest in the result, since it is sufficient that he is interested as a citizen in having the laws executed and the duty in question enforced." ' " (*Green* v. *Obledo* (1981) 29 Cal.3d 126, 144 [172 Cal.Rptr. 206, 624 P.2d 256], italics added; see also *Common Cause* v. *Board of Supervisors* (1989) 49 Cal.3d 432, 439 [261 Cal.Rptr. 574, 777 P.2d 610].)

Neither petitioner's theory nor the Court of Appeal's supports the holding below that petitioner may intervene by writ in Bradley's sentencing. Except as specifically provided by law, a private citizen has no personal legal interest in the outcome of an individual criminal prosecution against another person. Nor may the doctrine of "public interest" standing prevail over the public prosecutor's exclusive discretion in the conduct of criminal cases.

The parties to a criminal action are the People, in whose sovereign name it is prosecuted, and the person accused (§§ 684, 685; Gov. Code, § 100); the victim of the crime is not a party (see *People* v. *Parriera* (1965) 237 Cal.App.2d 275, 282-283 [46 Cal.Rptr. 835]). The prosecution of criminal offenses on behalf of the People is the sole responsibility of the public prosecutor. (Gov. Code, §§ 26500, 26501; see Cal. Const., art. V, § 13.)

■ The prosecutor ordinarily has sole discretion to determine whom to charge, what charges to file and pursue, and what punishment to seek. (E.g., *People* v. *Sidener* (1962) 58 Cal.2d 645, 650 [25 Cal.Rptr. 697, 375 P.2d 641].) No private citizen, however personally aggrieved, may institute criminal proceedings independently (e.g., *Rosato* v. *Superior Court* (1975) 51 Cal.App.3d 190, 226 [124 Cal.Rptr. 427]), and the prosecutor's own discretion is not subject to judicial control at the behest of persons other than the accused. (*People* v. *Wallace* (1985) 169 Cal.App.3d 406, 410 [215 Cal.Rptr. 203]; *Hicks* v. *Board of Supervisors* (1977) 69 Cal.App.3d 228, 240-241 [138 Cal.Rptr. 101]; *Taliaferro* v. *Locke* (1960) 182 Cal.App.2d 752, 755-757 [6 Cal.Rptr. 813].) An individual exercise of prosecutorial discretion is presumed to be " 'legitimately founded on the complex considerations necessary for the effective and efficient administration of law enforcement. . . .' " (*People* v. *Keenan* (1988) 46 Cal.3d 478, 506 [250 Cal.Rptr. 550, 758 P.2d 1081], quoting *People* v. *Heskett* (1982) 30 Cal.3d 841, 860 [180 Cal.Rptr. 640, 640 P.2d 776].)

Exclusive prosecutorial discretion must also extend to the *conduct* of a criminal action once commenced. "In conducting a trial a prosecutor is bound only by the general rules of law and professional ethics that bind all counsel." (*Taliaferro* v. *Locke, supra,* 182 Cal.App.2d at p. 756.) The prosecutor has the responsibility to decide in the public interest whether to seek, oppose, accept, or challenge judicial actions and rulings. These decisions, too, go beyond safety and redress for an individual victim; they involve "the complex considerations necessary for the effective and efficient administration of law enforcement." There is no place in this scheme for intervention by a victim pursuing personal concerns about the case.

■■■ Petitioner asserts that recent statutory and constitutional changes have broadened victims' "rights" in the conduct and results of felony proceedings. In particular, he observes, the voters have justified substantial reforms of the rules governing bail, evidence, and sentencing in felony cases by declaring that felony victims have the "right" to expect the appropriate detention, trial, and punishment of those who injured them. (Cal. Const., art. I, § 28, subd. (a), added by initiative, Primary Elec. (June 8, 1982) [commonly known as "The Victims' Bill of Rights"].)[5] Petitioner suggests we must infer that felony victims possess any remedies necessary to enforce their "rights."

No such inference is proper here. In the first place, the statute at issue, section 1170(d), was not adopted under the rubric of "victims' rights." Moreover, it is obvious that many recent legislative declarations about the "rights" of felony victims have been intended primarily as moral and philosophical abstractions supporting reform of the substantive criminal law. Such abstract references do not suggest an intent to alter criminal *practice* fundamentally by giving individual victims standing to intervene in ongoing criminal cases. (Cf. *California Emp. etc. Com.* v. *Hansen* (1945) 69 Cal.App.2d 767, 771-772 [160 P.2d 173].)

---

[5] Article I, section 28, subdivision (a) of the California Constitution, as added by "The Victims' Bill of Rights," states: "The People of the State of California find and declare that the enactment of comprehensive provisions and laws ensuring a bill of rights for victims of crime, including safeguards in the criminal justice system to fully protect those rights, is a matter of grave statewide concern. [¶] The rights of victims pervade the criminal justice system, encompassing not only the right to restitution from the wrongdoers for financial losses suffered as a result of criminal acts, but also the more basic expectation that persons who commit felonious acts causing injury to innocent victims will be appropriately detained in custody, tried by the courts, and sufficiently punished so that the public safety is protected and encouraged as a goal of highest importance. [¶] . . . [¶] To accomplish these goals, broad reforms in the procedural treatment of accused persons and the disposition and sentencing of convicted persons are necessary and proper as deterrents to criminal behavior and to serious disruption of people's lives." Other sections of the initiative measure then detailed various constitutional and statutory changes in the law governing bail, evidence, sentencing, and dispositions in felony cases.

The Constitution and statutes do accord individual felony victims certain "rights" of a more specific and personal nature. These include the "right" to restitution in appropriate circumstances, and to receive notice, appear, and state views in connection with disposition and sentencing. (Cal. Const., art. I, § 28, subd. (b); Pen. Code, §§ 1191.1, 1191.15, 1191.25, 1203.1, 1203.1g, 1203.1h, 1203.1k, 11116.10.) Whatever special considerations of standing may apply to this limited category of "victims' rights" (see *People* v. *Superior Court* (*Thompson*) (1984) 154 Cal.App.3d 319, 321-322 [202 Cal.Rptr. 585]; but see *Melissa J.* v. *Superior Court* (1987) 190 Cal.App.3d 476, 478-479 [237 Cal.Rptr. 5]), challenges based on section 1170(d) do not implicate them. ██ █ ██ We hold that petitioner has no personal "right" or "interest" which would permit his intervention in the decision to recall Bradley's sentence.[6]

The Court of Appeal assumed that even without an individual legal stake in Bradley's sentence, petitioner must be accorded standing under the "public interest" doctrine of *Green* v. *Obledo, supra,* 29 Cal.3d 126. As a matter of law, however, the *Green* concept of private standing to seek enforcement of a "public duty" is inapplicable here. The public prosecutor has no enforceable "duty" to conduct criminal proceedings in a particular fashion. On the contrary, his or her obligation is to exercise exclusive professional discretion over the prosecutorial function.

Moreover, we have made clear that "public interest" standing must yield to paramount considerations of public policy. In *Carsten* v. *Psychology Examining Com.* (1980) 27 Cal.3d 793 [166 Cal.Rptr. 844, 614 P.2d 276], we held that a dissident member of an administrative agency lacked standing as a citizen-taxpayer to challenge the agency's rulings. "We reach this conclusion," we noted, "because of the inevitable damage such lawsuits will inflict upon the administrative process." (P. 798.)

Similarly, recognition of citizen standing to intervene in criminal prosecutions would have "ominous" implications. (*Carsten, supra,* 27 Cal.3d at

---

[6]In a brief aside, the petition for mandate/prohibition complains that both the Humboldt County and the Shasta County Superior Courts violated petitioner's rights under section 1191.1, part of "The Victims' Bill of Rights," by refusing his requests to state views in opposition to resentencing continuances. However, section 1191.1 grants a victim rights of notice and appearance only at "sentencing proceedings," in order "to reasonably express his or her views concerning the crime, the person responsible, and the need for restitution." The court must consider the victim's statement when "imposing sentence." A continuance hearing is not a "sentencing proceeding" at which the victim's remarks would bear upon the appropriate sentence or probation conditions. Hence, petitioner's statutory rights were not violated when his counsel was refused the opportunity to object to sentencing continuances. Of course, petitioner will be entitled under section 1191.1 to receive notice, and to appear and state his views, when Bradley is resentenced.

p. 799.) It would undermine the People's status as exclusive party plaintiff in criminal actions, interfere with the prosecutor's broad discretion in criminal matters, and disrupt the orderly administration of justice.

We recognize that petitioner did not challenge the *prosecutorial decision to cooperate* in Bradley's resentencing; rather, he sought direct review of the *court's* "void" decision to recall the sentence. However, the result is the same. In effect, petitioner attempts an "end run" around a permissible choice made by the People's counsel in a criminal matter for which the prosecutor has sole litigation responsibility. This petitioner may not do.

■ Nor is it dispositive that petitioner claims the court's action was in excess of its jurisdiction, rather than a mere abuse of sentencing discretion. Even jurisdictional challenges must be raised by the parties, and it is their responsibility, not a stranger's, to decide what matters require litigation. Bradley's prosecutor was convinced by circumstances unique to this case not to oppose recall of Bradley's sentence under section 1170(d). A non-party may not second-guess this decision simply on grounds that "jurisdictional" issues are involved.[7]

■ For all these reasons, the Court of Appeal erred in ruling that petitioner has standing to challenge the recall of Bradley's sentence. Nothing more is necessary to our holding that the judgment must be reversed with directions to dismiss the mandamus action.

■ However, the sentencing issues raised by the petition for mandate are significant. The case is fully briefed, and all parties apparently seek a decision on the merits. Under such circumstances, we deem it appropriate to address petitioner's sentencing arguments for the guidance of the lower courts. Our discretion to do so under analogous circumstances is well settled. (E.g., *DiGiorgio Fruit Corp.* v. *Dept. of Employment* (1961) 56 Cal.2d 54, 58 [13 Cal.Rptr. 663, 362 P.2d 487] [moot appeal]; *People* v. *West Coast Shows, Inc.* (1970) 10 Cal.App.3d 462, 467-468 [89 Cal.Rptr. 290] [same].) We turn to the merits of petitioner's claims.[8]

---

[7] A rule against public intervention in individual criminal cases will not cause important issues to evade review, as the majority below implied. Whatever unusual circumstances apply to this case, the natural adversary relationship between the People and criminal defendants will usually ensure litigation of significant questions. Moreover, nothing we say here affects *independent* citizen-taxpayer actions raising criminal justice issues. (See, e.g., Code Civ. Proc., § 526a; *Van Atta* v. *Scott* (1980) 27 Cal.3d 424, 447-452 [166 Cal.Rptr. 149, 613 P.2d 210].)

[8] Under article VI, section 12, subdivision (b) of the California Constitution (hereafter article VI, section 12(b)), we have jurisdiction to "review the *decision of a Court of Appeal* in any cause." (Italics added.) Here the Court of Appeal's decision addressed two issues— standing and merits. Nothing in article VI, section 12(b) suggests that, having rejected the

## 2. *Recall and resentencing authority under section 1170(d).*

Section 1170(d) was enacted in 1976 as part of the Determinate Sentencing Act. As noted (see fn. 3, *ante*), the subdivision allows a sentencing court to recall its sentence "within 120 days of the date of commitment on its own motion, or at any time upon the recommendation of the Director of Corrections or the Board of Prison Terms . . . ." After recall, the court may "resentence the defendant in the same manner as if he or she had not previously been sentenced," provided any new sentence does not exceed the original sentence, grants credit for time served, and "appl[ies] the sentencing rules of the Judicial Council so as to eliminate disparity of sentences and to promote uniformity of sentencing. . . ."

■ Section 1170(d) is an exception to the common law rule that the court loses resentencing jurisdiction once execution of sentence has begun. (E.g., *Holder* v. *Superior Court* (1970) 1 Cal.3d 779, 783 [83 Cal.Rptr. 353, 463 P.2d 705]; *People* v. *Delson* (1984) 161 Cal.App.3d 56, 62 [207 Cal.Rptr. 244]; *People* v. *Calhoun* (1977) 72 Cal.App.3d 494, 497 [140 Cal.Rptr. 225].) Where the statute applies, and if such a sentencing option would otherwise be available, section 1170(d) allows the court, among other things, to grant probation with or without conditions such as service of time in county jail. (See §§ 1168, subd. (a), 1170, subd. (a)(2), 1203.)

■ Petitioner argues that section 1170(d) allows resentencing after commitment only to "eliminate disparity" and "promote uniformity," based solely on circumstances existing at the time the initial sentence was imposed. Petitioner implies that these limitations thus also extend to *recall of the original sentence*, since recall is merely the necessary preliminary to resentencing. Hence, petitioner reasons, even though Bradley's resentencing has not yet taken place, the trial court's June 1988 recall order was itself in excess of jurisdiction, and the original sentence must be reinstated forthwith. The Court of Appeal majority agreed.

Real parties contend, on the other hand, that "recall" and "resentencing" are distinct steps, and that only the resentencing step—which has not yet occurred in this case—is subject to the "disparity" and "uniformity" provisions of the statute. Regardless of what prompted the recall, real parties suggest, the court violates section 1170(d) only if the *resentence ultimately imposed* fails to meet the statutory requirements. Moreover, real parties assert, nothing in section 1170(d) limits resentencing discretion as petitioner suggests.

---

Court of Appeal's conclusion on the preliminary issue of standing, we are foreclosed from "review[ing]" the second subject addressed and resolved in its decision.

We agree with real parties that within the 120-day period, the court may recall a sentence on its own motion for any reason rationally related to lawful sentencing. The court may then impose any otherwise lawful resentence suggested by the facts available at the time of resentencing.

By its terms, section 1170(d) empowers a trial court to recall and vacate a prison sentence after commitment, with but two stated limitations. First, the power may be exercised only upon the court's own motion, or upon recommendation of the Director of Corrections (Director) or the Board of Prison Terms (Board). Second, in order to recall a sentence on its own initiative, the court must act within 120 days after it committed the defendant to prison.

Once the sentence and commitment have validly been recalled, section 1170(d) authorizes the court to "resentence . . . *in the same manner as if* [*the defendant*] *had not previously been sentenced* . . . ." (Italics added.) Insofar as it is not limited by other phrases in the subdivision, the "as if" language indicates that the resentencing authority conferred by section 1170(d) is as broad as that possessed by the court when the original sentence was pronounced.

The statute makes resentencing power narrower than original sentencing power in only two ways. First, the resentence may not exceed the original sentence. Second, the court must award credit for time served on the original sentence.

Petitioner and the Court of Appeal majority perceive a third limitation based on the statutory proviso that the resentence must apply Judicial Council sentencing rules "so as to eliminate disparity . . . and to promote uniformity . . . ." However, this phrase cannot plausibly be interpreted as limiting the court to correction of a "disparate" sentence.

In the first place, section 1170(d) does *not* state that recall and resentencing are authorized only *for the purpose* of "eliminat[ing] disparity" and "promot[ing] uniformity." The statutory language does not link *recall* with disparity at all, and declares only that any *resentence* ultimately imposed shall *apply* the Judicial Council's sentencing criteria so as to minimize disparity.

Nor, in context, does section 1170(d)'s reference to the antidisparity rules *imply* that the statute permits recall and resentencing *only to correct* a disparate sentence. The *entire* Determinate Sentencing Act (§ 1170 et seq.) was expressly intended to achieve "the elimination of disparity and the provision of uniformity" in punishment by introducing a scheme of fixed

prison terms "in proportion to the seriousness of the offense as determined by the Legislature to be imposed by the court with specified discretion." (§ 1170, subd. (a)(1); see *People* v. *Martin* (1986) 42 Cal.3d 437, 442-443 [229 Cal.Rptr. 131, 722 P.2d 905].) Section 1170.3, subdivision (a), directs the Judicial Council to "seek to promote uniformity in sentencing under [s]ection 1170" by adopting formal guidelines for exercise of the trial courts' determinate sentencing discretion. The rules promulgated by the Judicial Council under section 1170.3 explicitly extend to *all* determinate sentencing, not just to resentencing under section 1170(d). (§ 1170, subds. (a)(2), (d), (f)(1), (2); Cal. Rules of Court, rules 401, 403). Section 1170(d)'s reference to the rules thus suggests no limitation under that subdivision which does not apply to determinate sentencing in general.[9]

Section 1170(d) is the direct statutory descendant of a provision in the superseded *Indeterminate* Sentencing Law that had nothing to do with enforcing comparative uniformity of sentences. (See *People* v. *Roe* (1983) 148 Cal.App.3d 112, 116 [195 Cal.Rptr. 802]; *People* v. *Gainer* (1982) 133 Cal.App.3d 636, 639-640, fn. 3 [184 Cal.Rptr. 120].) Prior to 1976, section 1168 contained a parallel provision authorizing courts to recall and resentence on their own motion, or upon recommendation of the Director, "if [such action] is deemed warranted by the [Director's] diagnostic study and recommendations approved pursuant to [s]ection 5079 . . . ."[10]

Then, as now, the postcommitment diagnostic study and recommendations prepared and approved under section 5079 focused on the prisoner's *individual* circumstances and characteristics.[11] Section 1168 was understood

---

[9] Petitioner emphasizes a particular distinction between the wording of section 1170, subdivision (a)(2) (which governs initial sentencing), on the one hand, and section 1170(d) (which governs recall and resentencing) on the other. Section 1170, subdivision (a)(2) provides simply that "[i]n sentencing the convicted person, the court shall apply the sentencing rules of the Judicial Council." Section 1170(d), on the other hand, directs a resentencing court to apply such rules "so as to eliminate disparity . . . and to promote uniformity . . . ." As we have seen, however, the very purpose of the sentencing rules to which *both* subdivisions refer is the encouragement of uniformity and the reduction of disparity. Absent clearer indications of legislative intent, we cannot imagine how the sentencing rules are to be applied differently under section 1170(d) than under section 1170, subdivision (a)(2).

[10] The superseded portion of section 1168 provided: "When a defendant has been sentenced to be imprisoned in the state prison and has been committed to the custody of the Director . . . , if it is deemed warranted by the diagnostic study and recommendations approved pursuant to [s]ection 5079, the court may, within 120 days of the date of commitment on its own motion, or thereafter upon the recommendation of the Director . . . , recall the sentence and commitment previously ordered and resentence the defendant in the same manner as if he had not previously been sentenced."

[11] Then, as now, section 5079 required the Director to provide facilities and personnel "for a psychiatric and diagnostic clinic . . . at one or more of the state prisons . . . ." The clinic's work is to make "a scientific study of each prisoner's "career and life history" and the cause of the prisoner's criminal acts, and to make recommendations for the prisoner's "care,

as granting "broad" power to reconsider a sentence mistakenly imposed in the *individual* case. (See, e.g., *Holder* v. *Superior Court, supra,* 1 Cal.3d at p. 782.)

Beginning in 1976, the recall provision of section 1168 was transferred in substance to new section 1170(d). Several changes were made, but none suggest a new and exclusive focus on sentence uniformity and disparity. Section 1170(d) *omitted* the limiting reference to the Director's diagnostic study; named the Board as an additional entity authorized to recommend recall at any time; prohibited a more severe resentence; required credit for time served; and subjected any resentence (like all determinate sentences) to the Judicial Council's antidisparity rules.

■ It thus seems clear that by enacting section 1170(d), the Legislature intended to retain, within the limits of determinate sentencing, the preexisting judicial power to recall and reconsider a sentence on individual grounds. The cases have so assumed. (See, e.g., *People* v. *Keele* (1986) 178 Cal.App.3d 701, 705, fn. 3 [224 Cal.Rptr. 32]; *People* v. *Laue* (1982) 130 Cal.App.3d 1055, 1060 [182 Cal.Rptr. 99]; *People* v. *Colley* (1980) 113 Cal.App.3d 870, 871-872 [170 Cal.Rptr. 339].)

The statutory procedure for correction of "disparate" sentences is contained *elsewhere* in section 1170. Subdivision (f)(1) of section 1170 requires the Board, within one year after a prison term commences, to review the sentence for comparative disparity. If the Board finds the sentence disparate, it must notify the sentencing court, the attorneys, and the Judicial Council, stating the reasons for its determination. Within 120 days after such notification, the trial court "*shall* schedule a hearing and [after considering the Board's information] may recall the sentence and commitment . . . and resentence the defendant in the same manner as if the defendant had not been sentenced previously . . . ." (Italics added.) As in cases under section 1170(d), any resentence may not exceed the original sentence, and the court must apply the Judicial Council's rules "so as to eliminate disparity . . . and to promote uniformity of sentencing." (§ 1170, subd. (f)(2).)

If section 1170 were interpreted as petitioner and the Court of Appeal majority suggest, the statute would contain two separate, inconsistent, and confusing mechanisms for the sole purpose of correcting "disparate" sentences. Section 1170, subdivision (f) directs the Board to conduct a

---

training, and employment" with a view to his or her "reformation and . . . the protection of society. The recommendation shall be submitted to the Director . . . and shall not be effective until approved by the [D]irector. The Director . . . may modify or reject the recommendations" as the Director sees fit.

disparity review of every sentence *within one year* after its commencement. ██ ██ ██ If within this period the Board finds a sentence disparate, the trial court *must* schedule a hearing and "consider" whether the Board's finding warrants recall and resentencing.[12]

By contrast, section 1170(d) makes no reference to administrative review or findings, nonetheless allows either the Board or the Director to recommend recall of a sentence *at any time*, but apparently does *not* require the court to respond to the recommendation.[13] Moreover, under section 1170(d), the court *may* recall and resentence *on its own initiative*, but *need* not do so, and *cannot* do so more than 120 days after commitment. As Justice Poché's dissent in the Court of Appeal points out, "[i]t is . . . difficult to fathom" why the Legislature would treat the single problem of aberrant sentences in such Byzantine fashion, and in such strained and ambiguous language.

██ In fact, because subdivision (f) of section 1170 *assures* careful and orderly disparity review of *every* determinate prison sentence, there is little reason for a separate, discretionary procedure under section 1170(d) which also focuses exclusively on correction of disparity. ██ Where reasonably possible, we avoid statutory constructions that render particular provisions superfluous or unnecessary. (E.g., *People* v. *Olsen* (1984) 36 Cal.3d 638, 647 [205 Cal.Rptr. 492, 685 P.2d 52]; *Bowland* v. *Municipal Court* (1976) 18 Cal.3d 479, 489 [134 Cal.Rptr. 630, 556 P.2d 1081].) ██ Far more reasonable is the assumption that while section 1170, subdivision (f) was intended to deal specifically with correction of disparity, section 1170(d) confers a broader power to recall and resentence for *any* otherwise lawful reason, so long as the court takes the Judicial Council standards into account when imposing a new sentence.

This construction is confirmed in guidelines published by the Department of Corrections (CDC), whose Director is authorized under section 1170(d) to recommend recall of a prison sentence at any time after its commencement. CDC's 1985 classification manual notes that the superior court retains "absolute discretion" to recall a sentence within the first 120 days of

---

[12] Indeed, under section 1170, subdivision (f), this requirement of judicial "consider[ation]" compels the court to *accept* the Board's finding of disparity unless on the basis of substantial evidence the court concludes the finding is erroneous. Having accepted the administrative finding, the court *must* then recall and resentence within the nondisparate range "unless there is substantial evidence of countervailing considerations which justify a disparate sentence. . . ." (*People* v. *Martin, supra*, 42 Cal.3d 437, 447-448.)

[13] Section 1170(d) allows the sentencing court to recall and resentence at any time upon recommendation of the Board or the Director, but unlike section 1170, subdivision (f), it does not require the court to "consider" any such recommendation. (Cf. *Martin, supra*, 42 Cal.3d at pp. 447-448.)

sentencing. The classification manual also states that the Director may recommend recall at any time, independent of the Board's disparity review, "based on changes in the inmate's situation or significant new information that was not considered by the court in pronouncing sentence." (Classification Manual, Cal. Dept. of Corrections (1985) § 602, p. 600-1.1; see also *id.*, §§ 603(a), at p. 600-1.1, & 604(b), at p. 600-1.2 ["if conditions have changed to the extent that the inmate's continued incarceration in the Department is not in the interest of justice"].)

In early 1990, the classification manual was superseded by a department operations manual, which contains similar interpretations of section 1170(d). (See Dept. Operations Manual, Cal. Dept. of Corrections (1990) §§ 62020.3, 62020.6.) ■ Unless unreasonable or clearly contrary to the statutory language or purpose, the consistent construction of a statute by an agency charged with responsibility for its implementation is entitled to great deference. (E.g., *Nipper v. California Auto. Assigned Risk Plan* (1977) 19 Cal.3d 35, 45 [136 Cal.Rptr. 854, 560 P.2d 743].)

■ Accordingly, we conclude that section 1170(d) permits recall and resentencing for any otherwise lawful reason, not simply to correct a "disparate" sentence. The Humboldt County Superior Court did not exceed its powers under section 1170(d) by recalling Bradley's sentence within 120 days for reasons unrelated to disparity.

Nor can we accept the premise that section 1170(d) precludes consideration of circumstances which arose after the original sentencing. Section 1170(d) imposes no such express limitation on the court's powers. On the contrary, the statute simply provides that the court may recall its original sentence within 120 days, or upon recommendation of the Board or the Director, and may resentence "*as if* [*the defendant*] *had not previously been sentenced* . . . ." (Italics added.) The inference arises that the factors the court may consider are no more limited than if the resentencing were the original sentencing.

This view comports with principles generally applicable to resentencing law. ■ For example, it is well settled that when a case is remanded for resentencing after an appeal, the defendant is entitled to "all the normal rights and procedures available at his original sentencing" (*People v. Foley* (1985) 170 Cal.App.3d 1039, 1047 [216 Cal.Rptr. 865]; see also, e.g., *Van Velzer v. Superior Court* (1984) 152 Cal.App.3d 742, 744 [199 Cal.Rptr. 695]), including consideration of any pertinent circumstances which have arisen since the prior sentence was imposed (e.g., *People v. Flores* (1988) 198 Cal.App.3d 1156, 1160-1162 [244 Cal.Rptr. 322]).

For its narrower interpretation of section 1170(d), the Court of Appeal majority relied heavily on our construction of the recall/resentence language formerly contained in section 1168. (See discussion, *ante.*) In *Holder* v. *Superior Court, supra,* 1 Cal.3d 779 (hereafter *Holder*), we ruled that section 1168, as then in force, empowered a court only to reconsider whether its original sentencing decision was correct *when made,* and did not permit consideration of postsentence developments such as rehabilitation in prison. (1 Cal.3d at p. 782.)

Our conclusion flowed from two premises. First, we noted that section 1168 authorized recall and resentencing *if* such action was deemed warranted by the postsentence diagnostic study and recommendations approved by the Director pursuant to section 5079. (*Holder, supra,* 1 Cal.3d at p. 782.) Thus, we suggested, the statute merely provided a convenient alternative to section 1203.03, which allows the court to place the defendant in a diagnostic facility *prior* to sentencing for purposes of obtaining a report and recommendation. (1 Cal.3d at p. 782, fn. 3.)

Second, we perceived that if a court could recall and resentence based on postsentencing events, an anomalous duplication of authority would arise under the indeterminate sentencing scheme then in effect. Under that system, we noted, the Legislature had given the *Adult Authority* (the Board's predecessor) power "to determine the duration of imprisonment within statutory limits and the matter of parole . . . ." We reasoned that if the court could recall a sentence and grant probation based on rehabilitation after entering prison, "there manifestly would be two bodies (one judicial and one administrative) determining the matter of rehabilitation, and it is unreasonable to believe the Legislature intended such a result." (*Holder, supra,* 1 Cal.3d at p. 782, fn. 3.)

For the most part, these premises are inapplicable to current section 1170(d). When the Legislature moved the substance of the recall/resentence provision from section 1168 to section 1170(d), it did so with an explicit difference. Missing from the new statute was the prior language limiting the recall/resentence power to those cases in which such action was deemed warranted by the CDC's diagnostic report and recommendations. Section 1170(d), unlike the pre-1976 version of section 1168, contains *no* express limitation on the factors which can motivate a recall and resentence.

■ We presume the Legislature intends to change the meaning of a law when it alters the statutory language (*Eu* v. *Chacon* (1976) 16 Cal.3d 465, 470 [128 Cal.Rptr. 1, 546 P.2d 289]), as for example when it deletes express provisions of the prior version (*People* v. *Valentine* (1946) 28 Cal.2d 121, 142 [169 P.2d 1]). Because the Legislature is presumed aware of prior

judicial constructions of a statute, the inference of altered intent is particularly compelling when, as in this case, the omitted word or phrase was significant to such a construction. (*Clements* v. *T. R. Bechtel Co.* (1954) 43 Cal.2d 227, 231-232 [273 P.2d 5].) ▇▇▇ Omission from section 1170(d) of the diagnostic-report limitation previously contained in section 1168 is strong evidence that the Legislature no longer intended to limit the circumstances under which the court could invoke its recall and resentencing power.

Moreover, the policy concern which prompted *Holder*'s construction of section 1168 was largely eliminated by the Legislature at the time it adopted section 1170(d). Section 1170 was enacted as part of the 1976 statute which repealed most indeterminate prison sentences and substituted a system of determinate prison terms for most offenses punishable by prison. (Stats. 1976, ch. 1139, § 273, p. 5140.) In determinate sentencing, the actual period of prison incarceration is primarily determined by the *court's* choice of term, rather than by the Adult Authority's discretionary parole decisions. (See §§ 1170 et seq., 2931 et seq., 3040 et seq.) By transferring control over length of incarceration from the Adult Authority to the courts, the determinate sentencing system thus eliminates the danger that judicial recall and resentencing powers would interfere with primary administrative discretion to decide when a person initially sentenced to prison should be released.[14]

We assume that when the Legislature adopted section 1170(d), it was aware not only of our result in *Holder, supra,* 1 Cal.3d 779, but of the reasoning which underlay our holding in that case. By enacting section 1170(d) in the context of a determinate sentencing scheme, and by omitting a limiting phrase on which *Holder* had directly relied, the Legislature consciously undermined all grounds for *Holder*'s narrow construction of the pre-1976 recall/resentence provision. Under these circumstances, we infer no legislative intent that the *Holder* ruling be imported into the new statute.

The Court of Appeal majority found it significant that under current law, the Director may reduce a determinate prison sentence only by the amount of statutory "good time" and "worktime" credits the prisoner has earned

---

[14]Several crimes, including noncapital murder, attempted wilful and premeditated murder, attempted murder of a public official, and attempted or nonfatal trainwrecking, remain punishable by indeterminate life sentences. (See §§ 190, 218-219, 664, subd. 1.) Section 1170(d) (in contrast with the other portions of section 1170) does expressly apply to these indeterminate-sentence crimes, for which the sentencing choice—when one is available at all—is only between probation and the single open-ended prison term provided by law. (See §§ 1168, subd. (b), 1203, subd. (c), 1203.06, subd. (a)(1)(i), (2), 1203.075, subd. (a)(1), 1203.08, 1203.085, 1203.09, subds. (a), (b)(i).) Although section 1170.3 directs the Judicial Council to adopt criteria for all "sentencing under [s]ection 1170," the rules actually promulgated apply only to determinate sentences. (See Cal. Rules of Court, rule 403.)

(see §§ 2931, 2933), or for the prisoner's "heroic act[ion] in a life-threatening situation" or "exceptional assistance" in maintaining prison security. (§ 2935; see also Cal. Code Regs., tit. 15 (hereafter Regulations), § 3043, subd. (g).) As in *Holder, supra*, 1 Cal.3d 779, the majority reasoned, it would be anomalous if *judicial* recall and resentencing were available for postcommitment reasons—such as an agreement to testify in a non-prison-related criminal case[15]—which could not result in an *administrative* reduction of sentence.

We disagree. That the Determinate Sentencing Act has left the Director with narrow, carefully defined authority to award credits against a prison sentence does not undermine the principle that the court, the primary determinate sentencing authority, has much broader statutory jurisdiction to reconsider its original sentence, even on the basis of subsequent events.

In sum, we see no reason to conclude that section 1170(d), contrary to its terms, limits the reasons why a trial court may exercise its statutory authority to recall and resentence. We hold that section 1170(d) permits the sentencing court to recall a sentence for any reason which could influence sentencing generally, even if the reason arose after the original commitment. The court may thereafter consider any such reason in deciding upon a new sentence. After affording the victim the right to attend sentencing proceedings and express his or her views (§ 1191.1), the court may then impose any new sentence that would be permissible under the Determinate Sentencing Act if the resentence were the original sentence.[16]

Accordingly, even if the recall of Bradley's prison sentence was prompted by Bradley's postcommitment offer of testimony in another case, the court's action did not exceed its jurisdiction under section 1170(d). Nor is the court precluded by section 1170(d) from taking Bradley's cooperation into account when imposing any new sentence.

 Petitioner argues that even if the court could recall and resentence in light of Bradley's cooperation in the Kellotat case, the court lost jurisdic-

---

[15] Section 3043, subdivision (g) of the Regulations provides that a sentence credit of up to 12 months (see Pen. Code, § 2935) may be awarded by the Director for the following forms of heroism or exceptional assistance by a prisoner: "(1) Acts preventing loss of life or injury to the public, staff, or other inmates. [¶] (2) Acts preventing significant loss or destruction of property. [¶] (3) Providing sworn testimony in judicial proceedings involving prosecution of a felony offense *which occurred within the prison*." (Italics added.)

[16] Of course, resentencing under section 1170(d), like all determinate sentencing, must apply pertinent rules "so as to eliminate disparity . . . and to promote uniformity . . . ." We do not suggest that a court acting under section 1170(d) may consciously affirm or impose a "disparate" sentence absent "countervailing considerations which justify" such a disposition. (Cf. *Martin, supra*, 42 Cal.3d at pp. 449-450.)

tion to impose a new sentence when it failed to resentence within the 120-day period of section 1170(d). Hence, he reasons, the Court of Appeal correctly concluded that Bradley's original sentence must be reinstated.

We disagree. Cases under both section 1170(d) and the predecessor version of section 1168 have held that the court loses "own-motion" jurisdiction if it fails to *recall* a sentence within 120 days of the original commitment. (See *People* v. *Roe, supra,* 148 Cal.App.3d at p. 117; *People* v. *Calhoun, supra,* 72 Cal.App.3d at p. 497.) However, no decision has directly held that *both recall and resentencing* must occur within the statutory limit.[17]

Section 1170(d) could grammatically be read to mean that if the court acts on its own motion, it must both recall *and* resentence within 120 days after commitment. However, the statutory language is more susceptible to the understanding that the court preserves its jurisdiction by recalling the sentence within 120 days, and then may resentence "in the same manner as if [the defendant] had not previously been sentenced . . . ." Such phraseology implies there are no jurisdictional time limits on resentencing that would not apply on initial sentencing.

This flexible view is supported by a reading of section 1170(d) in its entirety. When recall stems from a recommendation by the Board or the Director, the statute imposes no jurisdictional requirement of immediate resentencing. No reason appears why the Legislature would wish a more rigid resentencing rule after a timely recall on the court's own motion.

As a general rule, time limits on the pronouncement of sentence are not jurisdictional, but are waivable by the parties. (E.g., *People* v. *Ford* (1966) 65 Cal.2d 41, 47 [52 Cal.Rptr. 228, 416 P.2d 132]; *People* v. *Williams* (1944) 24 Cal.2d 848, 850 [151 P.2d 244]; *People* v. *Jackson* (1982) 129 Cal.App.3d 953, 955-957 [181 Cal.Rptr. 429]; *People* v. *Cheffen* (1969) 2 Cal.App.3d 638, 642 [82 Cal.Rptr. 658].) The Legislature has not indicated otherwise here. We conclude the trial court has not lost resentencing jurisdiction, nor has it otherwise erred, by delaying resentencing with the consent of both Bradley and the People.

---

[17] The *Roe* court used the terms "recall and resentence" when referring to the "jurisdictional" 120-day limit, but there even the *recall* had not occurred within 120 days. In *Calhoun,* the trial court recalled its sentence within 120 days, apparently resentenced the defendant *after* the 120-day period, and purported to retain jurisdiction to recall the sentence again. *Calhoun* assumed the court's initial resentence was proper. The Court of Appeal held only that the court could not reinvoke the recall power on successive occasions.

In sum, the trial court did not err under section 1170(d) by recalling Bradley's sentence for reasons unrelated to disparity. ■ ■ ■ ■ ■ ■ Moreover, the court retains jurisdiction to impose any otherwise permissible new sentence, which may include consideration of facts that arose after Bradley was committed to serve the original sentence.[18]

## DISPOSITION

The judgment of the Court of Appeal, ordering issuance of a peremptory writ of mandate as sought by petitioner, is reversed with directions to dismiss the action.

Lucas, C. J., Broussard, J., Panelli, J., Kennard, J., and Arabian, J., concurred.

**MOSK, J.**—I concur in the well-reasoned opinion of Justice Baxter.

However, I would add a caveat. Penal Code section 1170, subdivision (d), authorizes the trial court to resentence a defendant in the "same manner" as if the defendant has not previously been sentenced. Not only is the court limited to no greater sentence than that originally imposed, but one additional factor must be stressed.

The "same manner" requires resentencing within the statutory period specified in Penal Code section 1191, that is, 28 days. Thus the trial court

---

[18] Petitioner claims the trial court has exceeded its discretion, or threatens to do so, in several other respects. None of his arguments has merit.

■ Petitioner suggests that because Bradley committed a "serious felony," sentencing consideration in return for his cooperation would constitute plea bargaining prohibited by section 1192.7. (Subds. (a), (b), (c)(8).) But section 1192.7, by its terms, applies only to bargains concerning pleas to the charges. (Subd. (b).)

■ Petitioner claims Bradley's crime and prior felony record render him ineligible for the probationary conditions he demands. Bradley's conviction of firearm assault with a finding of intentional great bodily injury does preclude probation, absent "unusual" circumstances in which probation would serve the "interests of justice." (§ 1203, subd. (e)(2), (3).) However, Bradley's promise of crucial testimony in an important prosecution may constitute such unusual circumstances, so long as the court does not ignore other factors properly bearing on Bradley's suitability for probation. Petitioner notes a record admission by Bradley's counsel that Bradley's prior record precludes probation. However, the information did not allege, and the record does not disclose, specific circumstances which render Bradley absolutely ineligible for probation. (See §§ 1203.06, 1203.075, 1203.08.)

■ Petitioner urges that the court may act under section 1170(d) only on its *own* motion, or upon "recommendation" of the Board or the Director. (See, e.g., *Alanis* v. *Superior Court* (1970) 1 Cal.3d 784 [83 Cal.Rptr. 355, 463 P.2d 707] [defendant had no formal, reviewable standing to apply for probation under former § 1168].) Hence, he contends, the court exceeded its jurisdiction by acting here at the behest of Bradley and his prosecutor. However, a recall does not exceed the court's "own-motion" jurisdiction simply because the court was approached with an informal request to act.

may recall its sentence within 120 days of the date of the commitment, and then must resentence the defendant within 28 days thereafter. The court is not permitted to delay the proceedings indefinitely. The entire process may take no more than a total of 148 days.

Of course, as the majority opinion declares, a defendant may waive time for sentencing or resentencing. Since there was a waiver in this instance, no time problem arises and the trial court has not acted in excess of its jurisdiction.