Filed 6/17/21  P. v. Xiong CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C089915 |
| Plaintiff and Respondent, | (Super. Ct. No. 12F02578) |
| v. | |
| JOHN XIONG, | |
| Defendant and Appellant. | |

Defendant John Xiong appeals the trial court's denial of the California Department of Corrections and Rehabilitation's (CDCR) recommendation under Penal Code section 1170, subdivision (d)(1) (hereafter, section 1170(d)(1)), that the trial court consider recalling defendant's sentence and resentencing him.[1]  Defendant contends the trial court's denial of resentencing without an opportunity to be heard or to have counsel appointed for him violated both his federal and state constitutional rights and was structural error reversible per se.  We agree in part and reverse and remand for the trial

---

[1] Undesignated statutory references are to the Penal Code.

1

court to provide defendant the opportunity to present additional information relevant to the recommendation, and for the trial court to reconsider whether to exercise its discretion to recall defendant's sentence after receiving this information, if any.

## I. BACKGROUND[2]

Following defendant's conviction on multiple counts and enhancement allegations, the trial court sentenced him to a term of 36 years four months, which included doubling the sentence as a result of a prior strike, a 20-year firearm enhancement, and a five-year prior conviction enhancement. We affirmed the conviction under *Wende* review, and the judgment became final in 2017. (*People v. Xiong, supra*, C081131.)

In April 2019, CDCR sent the trial court a letter under section 1170(d)(1), recommending the trial court consider recalling defendant's sentence and resentencing him based on amendments to section 667, subdivision (a), effective January 2019, allowing the trial court to strike that enhancement.[3] The letter included a number of attachments, including defendant's programming history, detailing his behavior and program participation while incarcerated. After reviewing the recommendation, the trial court declined to act on it, noting that although defendant had committed a robbery and personally discharged the gun in 2012, he was not sentenced until 2016, so had only been in prison for three years for "this very serious and violent felony." In addition, defendant

---

[2] The substantive facts underlying this conviction are not necessary to our resolution of this case on appeal and are therefore not recounted here. They can be found in our earlier nonpublished opinion, *People v. Xiong* (Feb. 24, 2017, C081131) [nonpub. opn.].

[3] The term also included a 20-year firearm enhancement under section 12022.53, subdivision (b). Under Senate Bill No. 620, also enacted subsequent to the sentencing in this case, trial court's now have discretion to strike this firearm enhancement. Contrary to defendant's assertion, the CDCR did not raise this as a basis for recalling and resentencing defendant.

was convicted of being a felon in possession of a firearm. At the time of sentencing, the trial court could have dismissed the strike prior, rather than doubling the sentence, but did not. The trial court found the sentence imposed "reflects the proper measure of justice for the crimes [defendant] committed." Accordingly, the trial court summarily denied the CDCR request.

## II. DISCUSSION

Defendant contends the trial court's denial of the CDCR's recommendation to recall his sentence without a hearing denied him due process under both the federal and California Constitutions. Defendant claims section 1170(d)(1) "expands" his liberty interest in resentencing protected under the federal guarantee of due process of law (U.S. Const., 5th & 14th Amends.) and the comparable, but broader, state guarantee of due process of law (Cal. Const., art. I, §§ 7, subd. (a), 15). He contends under both the federal and California Constitution, he was entitled to notice, an opportunity to be heard, a statement of reasons, and had a Sixth Amendment right to counsel. The People argue defendant is not entitled to postconviction relief under section 667, subdivision (a), as his judgment was final before the amendments to that section became operative and, therefore, he is not eligible for retroactive relief; and that section 1170(d)(1) does not require the trial court to provide notice, an opportunity to be heard, or a statement of reasons for rejecting the CDCR recommendation.

### A. *Statutory Language*

In pertinent part, section 1170(d)(1) provides: "the court may, within 120 days of the date of commitment on its own motion, or at any time upon the recommendation of the secretary [of the CDCR] or the Board of Parole Hearings in the case of state prison inmates, . . . recall the sentence and commitment previously ordered and resentence the defendant in the same manner as if they had not previously been sentenced, provided the new sentence, if any, is no greater than the initial sentence. The court resentencing under this subdivision shall apply the sentencing rules of the Judicial Council so as to eliminate

3

disparity of sentences and to promote uniformity of sentencing. The court resentencing under this paragraph may reduce a defendant's term of imprisonment and modify the judgment, including a judgment entered after a plea agreement, if it is in the interest of justice. The court may consider postconviction factors, including, but not limited to, the inmate's disciplinary record and record of rehabilitation while incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the inmate's risk for future violence, and evidence that reflects that circumstances have changed since the inmate's original sentencing so that the inmate's continued incarceration is no longer in the interest of justice."

Section 1170(d)(1) authorizes the secretary of the CDCR to recommend to the superior court that the court recall a previously imposed sentence and resentence the defendant. (*People v. Loper* (2015) 60 Cal.4th 1155, 1165 (*Loper*), citing *Dix v. Superior Court* (1991) 53 Cal.3d 442, 460 (*Dix*).) The CDCR recommendation furnishes the court with jurisdiction it would not otherwise have to recall and resentence. (*People v. Frazier* (2020) 55 Cal.App.5th 858, 866 (*Frazier*).) The recommendation is "an invitation to the court to exercise its equitable jurisdiction." (*Ibid.*)

"In deciding whether to recall a sentence under section 1170, subdivision (d)(1), the trial court may exercise its authority 'for any reason rationally related to lawful sentencing.' " (*People v. McCallum* (2020) 55 Cal.App.5th 202, 210 (*McCallum*).) "Once the sentence and commitment have validly been recalled, section 1170(d) authorizes the court to 'resentence . . . in the same manner as if [the defendant] had not previously been sentenced.' " (*Dix, supra,* 53 Cal.3d at p. 456, italics omitted.) In resentencing, the trial court may consider a variety of post-conviction factors " 'and evidence that reflects that circumstances have changed since the inmate's original sentencing so that the inmate's continued incarceration is no longer in the interest of justice.' " (*McCallum, supra,* at p. 210.) Thus, section 1170(d)(1) contains a two-step process. At the first step, the trial court decides whether to recall the sentence. If the

4

court decides not to recall the sentence, this ends the inquiry.  If the court decides to recall the sentence, however, the inquiry moves onto the second step, and the court holds a resentencing hearing.  (See § 1170(d)(1); see also *Dix, supra*, at p. 463.)  In this case, we are only called on to address the due process requirements at the first step, the decision whether to recall the sentence.

B.     *Application to Final Judgment*

As a general statement, the People are correct that the defendant could not, himself, seek postconviction relief under section 667, subdivision (a), as it applies retroactively only to cases not yet final when it was enacted, and his conviction was final long before the amendments were enacted.  (*In re Estrada* (1965) 63 Cal.2d 740, 742; *People v. Garcia* (2018) 28 Cal.App.5th 961, 972.)  But, the People's argument ignores the procedural posture of this case.  Defendant did not seek relief under section 667, subdivision (a).  Rather, under section 1170(d)(1), the CDCR initiated these proceedings, recommending the trial court consider recall and resentencing based on the statutory amendments.  There is nothing in section 1170(d)(1) limiting its application to cases not yet final on appeal.  To the contrary, the statute specifically states the CDCR may recommend the trial court recall and resentence "at any time" and that, if it chose to, the trial court "shall apply the sentencing rules of the Judicial Council so as to eliminate disparity of sentences and to promote uniformity of sentencing."  Accordingly, although this case has been long since final, the CDCR was not precluded from recommending the trial court recall and resentence defendant.

C.     *Due Process*[4]

---

[4] The People argue that defendant's due process claim is without merit, because the statute does not contemplate a requirement of notice, hearing, statement of decision, or right to counsel.  The claim on appeal here is not what the statute provides, but what due process requires.  That statutory provisions may fail to meet the mandatory minimum requirements of due process does not excuse us from the obligation to ensure those

5

"[D]ue process is flexible and calls for such procedural protections as the particular situation demands." (*Morrissey, supra,* 408 U.S. at p. 481.) "[I]dentification of the dictates of due process generally requires consideration of (1) the private interest that will be affected by the official action, (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards, (3) the dignitary interest in informing individuals of the nature, grounds and consequences of the action and in enabling them to present their side of the story before a responsible governmental official, and (4) the governmental interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." (*People v. Ramirez* (1979) 25 Cal.3d 260, 269; see also *Mathews v. Eldridge* (1976) 424 U.S. 319, 335.) Balancing the relevant interests supports our conclusion that due process requires more procedural safeguards than were given here.

In *Loper, supra,* 60 Cal.4th at pp. 1163-1165, our Supreme Court held that a denial of compassionate release under section 1170, subdivision (e) affected the defendant's substantial rights and supported an appeal by the defendant. In reaching this conclusion, the court discussed the individual right at stake: " 'The "right" which [the defendant] is asserting is his "right" to receive a sentence which is not disparate when compared to sentences received by other similarly situated convicts. Underlying this is [the defendant's] right to liberty—and to suffer only that deprivation of liberty which his crimes warrant.' " (*Loper, supra*, at p. 1163.) This same right arises after a section 1170(d)(1) recommendation for recall and resentencing is made. Under section

---

minimal procedural safeguards are in place. (See *People v. Vickers* (1972) 8 Cal.3d 451, 456-460; see also *Morrissey v. Brewer* (1972) 408 U.S. 471, 481 (*Morrisey*).) In this case, we are required to determine "whether the minimum requirements for due process [were] satisfied—not whether they were statutorily required." (*People v. Amor* (1974) 12 Cal.3d 20, 30.)

1170(d)(1), if the trial court accepts a recommendation for recall, it is required to apply the sentencing rules "to eliminate disparity of sentences and to promote uniformity of sentencing," so as not to deprive the defendant his right to liberty. Because section 1170(d)(1) implicates the same right that was at issue in *Loper*, we conclude the operation of this statute that allows for recall and resentencing for any reason "in the interest of justice" affects defendant's substantial rights. We use that substantial right to analyze the procedural due process requirements.

## D. Balancing Interests

The private interest is defendant's liberty, in the way of a potentially significant reduction of his sentence. If defendant's sentence were recalled, he would have the opportunity to a full resentencing at which the trial court could exercise its discretion and strike the 20-year firearm enhancement and the five-year prior conviction enhancement, striking 25 years from defendant's 36 year sentence. Defendant was sentenced in early 2016 and received over four years of presentence custody credits. Thus, if the trial court struck both enhancements and reduced defendant's sentence by 25 years, defendant could be eligible for release shortly. (*People v. Xiong, supra*, C081131.)

There is a legitimate governmental interest in reducing administrative and fiscal burdens and preserving judicial resources. Requiring no more than a summary procedure for deciding whether to recall a sentence may advance that legitimate governmental interest. However, the fiscal and administrative burden of providing notice to defendant is neither extensive nor undue. Here, the district attorney and public defender's office were given notice. It is not a significant additional burden to add defendant to the list of those already receiving notice of the CDCR's recommendation. At the same time defendant is given notice, defendant could also be informed of the opportunity to provide evidence to the court.

We reject the People's assertion that defendant is not entitled to notice or any opportunity to be heard. In *McCallum, supra,* 55 Cal.App.5th 202, after CDCR

7

submitted its recommendation, the defendant's attorney requested the court hold a case management conference and, if necessary, set a briefing and hearing schedule. (*Id*. at pp. 208-209.) Without holding a hearing, the trial court issued an order explaining its reasons for not exercising its discretion to recall the sentence. (*Id*. at p. 209; see also *Frazier, supra*, 55 Cal.App.5th at p. 866.) The appellate court held that the defendant had no due process right to a hearing before the trial court determined whether to recall the sentence. (*McCallum, supra*, at p. 215.) However, the trial court's rejection of CDCR's recommendation without allowing the defendant an opportunity to present additional information was an abuse of discretion. (*Id*. at pp. 218-219.) We follow *McCallum*. Further, we conclude that a defendant who has no opportunity to present additional information in part because of a lack of notice is no less entitled to remand.[5]

*E.     Right to Counsel*

As for the right to counsel, the United States Supreme Court has declined to extend the Sixth Amendment right to counsel to postconviction proceedings. (See, e.g., *Pennsylvania v. Finley* (1987) 481 U.S. 551, 555.) And, while not specifically addressing the right to counsel, the Supreme Court has also held that the Sixth Amendment was not implicated by an incarcerated defendant's statutory motion for a sentence modification based on intervening amendments to the federal sentencing guidelines. (*Dillon v. United States* (2010) 560 U.S. 817, 828 [the statutory remedy merely represented "a congressional act of lenity intended to give prisoners the benefit of later enacted adjustments" to the sentencing guidelines].) Several California courts have adopted the reasoning of *Dillon* when called upon to address the right to counsel as to eligibility for resentencing in petitions under Proposition 36 and Proposition 47. Those

---

[5] In this case the trial court provided a written explanation for its decision. For this reason, we need not address whether due process required the preparation of a statement of reasons.

courts have concluded that the right to counsel attaches only after the determination that defendant is eligible for relief. Accordingly, here, it is only after the matter proceeds to resentencing that the right to counsel attaches. (*People v. Rouse* (2016) 245 Cal.App.4th 292, 298-301, and cases cited therein.)

We agree with the conclusion in *Frazier*, "[t]here simply is no constitutional right to counsel or a hearing in connection with every postjudgment request with the potential to affect a substantial right." (*Frazier, supra,* 55 Cal.App.5th at p. 867.) The CDCR's "recommendation letter inviting the court to exercise its jurisdiction pursuant to section 1170, subdivision (d)(1), to recall a sentence, without more, does not trigger a due process right to counsel." (*Id*. at p. 869.)

## F.	Reversible Error

Not every due process violation is reversible per se. (*Arizona v. Fulminante* (1991) 499 U.S. 279, 307-308; *People v. Carreon* (1984) 151 Cal.App.3d 559, 574.) There are circumstances in which a finding of prejudice may be required. (*People v. Bostick* (1965) 62 Cal.2d 820, 824.) The context and type of due process violation dictates whether the error is reversible per se or subject to harmless error analysis. "The importance of the constitutional right, standing alone, is not dispositive of the question whether the error is susceptible to harmlessness review." (*People v. Aranda* (2012) 55 Cal.4th 342, 366.)

Trial errors may be evaluated to see if the error was harmless beyond a reasonable doubt. Trial errors are those which occur during presentation of the case to the trier of fact. (*Arizona v. Fulminante, supra,* 499 U.S. at pp. 307-308.) By contrast, structural errors demand automatic reversal. Structural errors are "defects in the constitution of the trial mechanism, which defy analysis by 'harmless-error' standards." (*Id*. at p. 309.) Structural defects are those that affect "the framework within which the trial proceeds, rather than simply an error in the trial process itself." (*Id*. at p. 310.)

9

To determine if an error is susceptible to harmless error review, we examine "whether the error rendered the *trial* 'fundamentally unfair or an unreliable vehicle for determining guilt or innocence' [citation] or whether the effect of the error is 'necessarily unquantifiable and indeterminate.' " (*People v. Aranda, supra,* 55 Cal.4th at p. 366.)  In the circumstances of this case, we conclude the effect of the error is necessarily unquantifiable and indeterminate.  The due process violations here prevented defendant from having a meaningful opportunity to be heard and to present evidence in his favor. "Determining prejudice in this context would require 'a speculative inquiry into what might have occurred in an alternate universe.' " (*Severson & Werson, P.C. v. Sepehry-Fard* (2019) 37 Cal.App.5th 938, 951.)  We simply cannot know what impact this failure had on the proceedings.  (See *ibid.; In re Jasmine G.* (2005) 127 Cal.App.4th 1109, 1115-1116 [failure to provide notice and an opportunity to be heard can be reversible per se].) Accordingly, we conclude the due process violations in this case are reversible per se.

## III.  DISPOSITION

The order declining to recall defendant's sentence is reversed.  The matter is remanded to the trial court for further proceedings consistent with this opinion.

/S/

_____

RENNER, J.

We concur:

/S/

_____

ROBIE, Acting P. J.

/S/

_____

KRAUSE, J.