TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

|  |  |  |
|---|---|---|
| OPINION | : | |
| of | : | No. 94-109 |
| | : | |
| DANIEL E. LUNGREN | : | April 14, 1994 |
| Attorney General | : | |
| | : | |
| CLAYTON P. ROCHE | : | |
| Deputy Attorney General | : | |
| | : | |

THE HONORABLE JAMES L. BRULTE, MEMBER OF THE CALIFORNIA ASSEMBLY, has requested an opinion on the following question:

May a registered voter request an absentee ballot for more than one election in a single application?

CONCLUSION

A registered voter may not request an absentee ballot for more than one election in a single application except for a special election to fill a vacancy in office when the election includes a special primary election.

ANALYSIS

The Legislature has enacted a comprehensive statutory scheme governing requests for absentee ballots by registered voters. (Elec. Code, §§ 1000-1456.)[1] In this opinion, we are not concerned with the statutory provisions for disabled persons (§§ 1450-1456; see 76 Ops.Cal.Atty.Gen. 154 (1993)), members of the armed forces and their families, persons temporarily living outside of the United States, or those serving on merchant vessels (§§ 1200-1208). Rather, we are concerned with a typical registered voter applying for an absent voter's ballot, and the question is whether the application may cover more than one election. We conclude generally that it may not.

In resolving the issues presented, we may rely upon several well established principles of statutory construction. "The object that a statute seeks to achieve is of primary importance in statutory interpretation." (*Lusardi Construction Co.* v. *Aubry* (1992) 1 Cal.4th 976,

---

[1]All section references are to the Elections Code unless otherwise noted.

987.) "`In determining intent, we look first to the language of the statute, giving effect to its "plain meaning."'" (*Burden* v. *Snowden* (1992) 2 Cal.4th 556, 562.) "The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible." (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387.) "[I]t is presumed the Legislature intended reasonable results consistent with its expressed purpose, not absurd consequences." (*Harris* v. *Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1165-1166.) "When reasonably possible, we avoid statutory constructions that render particular provisions superfluous or unnecessary." (*Dix* v. *Superior Court* (1991) 53 Cal.3d 442, 459.) "Unless unreasonable or clearly contrary to the statutory language or purpose, the consistent construction of a statute by an agency charged with responsibility for its implementation is entitled to great deference." (*Id.*, at p. 460.)

Applying these rules of construction, we believe that except in one instance, only a single election may be the subject of an absent voter's ballot application. Section 1002 states with respect to the time within which an application for an absent voter's ballot may be made:

"Except as provided in Chapter 7 (commencing with Section 1450), application for an absent voter's ballot shall be made in writing to the elections official having jurisdiction over the election between the 29th and the 7th day prior to the election. The application shall be signed by the applicant and shall show his place of residence. Any applications received by the elections official prior to the 29th day shall be kept and processed during the application period."[2]

References to "the election" in section 1002 connote a specified single election and a period of time before such single election when the application may be filed.

Consistent with this statutory language, section 1006 sets forth the information which a voter must provide in an application for an absent voter's ballot. It states in part:

"(a)  Any printed application which is to be distributed to voters for requesting absent voter ballots shall contain spaces for the following:

"(1)  The printed name and residence address of the voter as it appears on the affidavit of registration.

"(2)  The address to which the ballot is to be mailed.

"(3)  The voter's signature.

"(4)  The name and date of the election for which the request is to be made.

"(5)  The date the application must be received by the clerk.

"(b) (1)  The information required by paragraphs (1), (4), and (5) of subdivision (a) may be preprinted on the application. The information required by paragraphs (2) and (3) of subdivision (a) shall be personally affixed by the voter."

---

[2]As previously indicated, "Chapter 7" concerns permanent absent voter status for disabled persons.

Subdivision (a)(4) of section 1006 thus requires that the application provide "[t]he name and date of the election," again demonstrating that the application is to be made and be applicable to a single election. This conclusion is supported by the fact that subdivision (b)(1) permits such information to be preprinted on the application.

While an application for an absent voter's ballot may apply only to a single election in most circumstances, an exception is to be recognized for a special election when part of the electoral process for the election involves a special primary election. This situation is exemplified in elections to fill vacancies which arise in congressional and legislative offices.[3]

The procedures for filling vacancies in congressional offices are described in article 1, section 2, paragraph 4 of the United States Constitution: "When vacancies happen in the representation from any state, the executive authority thereof shall issue writs of election to fill such vacancies." Similarly with respect to state legislative offices, article IV, section 2, subdivision (d) of the California Constitution provides: "When a vacancy occurs in the Legislature the Governor immediately shall call an election to fill the vacancy." Implementing these constitutional provisions is Government Code section 1773, which states:

"When a vacancy occurs in the office of Representative to Congress or in either houses of the Legislature, the Governor shall within 14 days after the occurrence of the vacancy issue a writ of election to fill the vacancy . . . .

"The Governor shall issue the election proclamation under his hand and the Great Seal of the state, and transmit copies to the board of supervisors of the counties in which the election is to be held."

The election procedures for conducting such a special election are found in sections 7200-7204. (See § 2651.) Section 7200.5 states: "A special election to fill a vacancy . . . shall be conducted on a Tuesday at least 112 days but no more than 119 days, following the issuance of an election proclamation by the Governor . . . ." A special primary election with specific authorization for absentee ballot requests is set forth in section 7201, which states:

"A special primary election shall be held in the district in which the vacancy occurred on the eighth Tuesday or, if the eighth Tuesday is the day of or the day following a state holiday, the ninth Tuesday preceding the day of the special election at which the vacancy is to be filled. . . .

"Notwithstanding Section 1002, applications for absent voters' ballots may be submitted not more than 25 days before the primary election, except that Section 1002 shall apply if the special election or special primary election is consolidated with a statewide election. . . ."[4]

If any candidate receives a majority of the votes cast at a special primary election, "he shall be declared elected." (§ 7202, subd. (a).) If such should occur, the special primary election in effect

---

[3]Special primary elections could also arise in the filling of vacancies in other offices, particularly those under city and county charter provisions. Our analysis with reference to congressional and legislative offices would generally apply to such offices as well.

[4]Section 1002 specifies when applications for absentee ballots are to be filed.

becomes *the* special election.  (§ 7202; *Cf. Brailsford* v. *Blue* (1962) 57 Cal.2d 335, 338; *Immel* v. *Langley* (1959) 52 Cal.2d 104, 106; *Donnellan* v. *Hite* (1956) 139 Cal.App.2d 43, 46.)

On the other hand, if no candidate at a special primary election receives a majority of the votes cast, nominated candidates for each political party and independent nominees are required to participate in a runoff  election, which then constitutes the previously called and mandated special election to fill the vacancy.  (§ 7203.)

Hence, for elections to fill vacancies in congressional and legislative offices, (1) "an" election to fill the vacancy is contemplated, (2) a special primary election is provided to nominate candidates, (3) the special primary election may become "the" election, obviating a runoff election, (4) a short period of time is given between the special primary election and any requisite runoff election, and (5) specific authorization is given for absentee ballot applications covering the special primary election but not for the runoff election.   In these circumstances, both the special primary election and the runoff election may together be considered "the" special election for which an application may be submitted under the terms of sections 1002, 1006, and 7201.

We note that the foregoing statutory provisions are administered and have been so interpreted by the Secretary of State.  Government Code section 12172.5 provides in part:

> "The Secretary of State is the chief elections officer of the state, and shall administer the provisions of the Elections Code.  The Secretary of State shall see that elections are efficiently conducted and that state election laws are enforced . . . ."

With particular regard to an application for an absent voter's ballot, section 1006.1 states:

> "The Secretary of State shall prepare and distribute to appropriate elections officials a uniform application format for all absent voter's ballots which conforms to the requirements of this chapter.  This format shall be followed by all individuals, organizations, and groups who distribute applications for an absent voter's ballot.  The uniform format need not be utilized by elections officials in preparing an absent voter's ballot application to be included with the sample ballot."

We are informed that for purposes of efficiency, the Secretary of State has approved the use of a single application for both a special primary election and possible runoff election to fill a vacancy in a congressional or legislative office.  Such an administrative practice has occurred in the counties of Kern, Monterey, San Diego, San Francisco, and  Santa Clara.

In our view the Secretary of State's administrative interpretation of the relevant statutes is a reasonable construction allowing a single application to cover the special primary election and possible runoff election.  Given that the unique relationship between the two allows a reasonable interpretation that they are in reality a single election to fill a single vacancy and given that a relatively short time period exists between the two, it is administratively efficient to authorize a single absentee ballot application for both segments of such an election.

For the foregoing reasons, we conclude that an absentee ballot application may only apply to a single election except for a special election to fill a vacancy in office when such an election includes a special primary election.

\* \* \* \* \*