TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 95-814 |
| of | : | |
| | : | June 20, 1996 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| GREGORY L. GONOT | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE CATHIE WRIGHT, MEMBER OF THE CALIFORNIA STATE ASSEMBLY, has requested an opinion on the following question:

Do baseball trading cards purchased by a card shop constitute tangible personal property for purposes of regulation under the Secondhand Goods Law (Bus. & Prof. Code, §§ 21500-21672)?

CONCLUSION

Baseball trading cards purchased by a card shop do not constitute tangible personal property for purposes of regulation under the Secondhand Goods Law (Bus. & Prof. Code, §§ 21500-21672).

ANALYSIS

The regulation of the sale or other disposition of secondhand goods is set forth in a statutory scheme known as the Secondhand Goods Law (Bus. & Prof. Code, §§ 21500-21672; "Act").[1] Watches (§§ 21500-21509), builders' tools (§§ 21550-21556), junk (§§ 21600-21609), and tangible personal property (§§ 21625-21647) are among the items that are specifically regulated. The question

_____

[1] All section references hereinafter are to the Business and Professions Code.

1.                                                                              95-814

presented for resolution is whether baseball trading cards purchased by a card shop[2] constitute "tangible personal property" subject to the Act's provisions. We conclude that baseball trading cards are not subject to the Act's requirements as tangible personal property when purchased by a card shop, but they would be subject to the Act's requirements as "sports trading cards."

The Legislature has expressly declared the Act's purposes in regulating tangible personal property. Section 21625 provides:

"It is the intent of the Legislature in enacting this article [§§ 21625-21647] to curtail the dissemination of stolen property and to facilitate the recovery of stolen property by means of a uniform, statewide, state-administered program of regulation of persons whose principal business is the buying, selling, trading, auctioning, or taking in pawn of tangible personal property and to aid the State Board of Equalization to detect possible sales tax evasion.

"Further, it is the intent of the Legislature in enacting this article to require the uniform statewide reporting of tangible personal property acquired by persons whose principal business is the buying, selling, trading, auctioning, or taking in pawn of tangible personal property, unless the property or the transaction is specifically exempt herein, for the purpose of correlating these reports with other reports of city, county, and city and county law enforcement agencies and further utilizing the services of the Department of Justice to aid in tracing and recovering stolen property.

"Further, it is the intent of the Legislature that this article shall not be superseded or supplanted by the provisions of any ordinance or charter of any city, county, or city and county."

Pursuant to section 21628, a secondhand goods dealer must report to a police chief or sheriff the purchase of tangible personal property:

"Every secondhand dealer . . . shall report daily, or on the first working day after receipt or purchase of such property, on forms either approved or provided at actual cost by the Department of Justice, all tangible personal property which he or she has purchased, taken in trade, taken in pawn, accepted for sale on consignment, or accepted for auctioning, to the chief or police or to the sheriff . . . ."[3]

_____

[2] A "card shop" would be one that is in the business of buying, trading, and selling baseball trading cards.

[3] A secondhand dealer is defined in section 21626 as follows:

"(a) A `secondhand dealer,' as used in this article, means and includes any person, copartnership, firm, or corporation whose business includes buying, selling, trading, taking in pawn, accepting for sale on consignment, accepting for auctioning, or auctioning secondhand tangible personal property. A `secondhand dealer' does not include a `coin dealer.'

"(b) As used in this section, a `coin dealer' means any person, firm, partnership, or corporation

No transactions that require reporting under section 21628 may be executed with a minor.  (§ 21643.)

"Tangible personal property," insofar as that term may be relevant to the question presented, is defined in section 21627 as follows:

"(a)    As used in this article, `tangible personal property' includes, but is not limited to, all secondhand tangible personal property which bears a serial number or personalized initials or inscription or which, at the time it is acquired by the secondhand dealer, bears evidence of having had a serial number or personalized initials or inscription.

"(b)    `Tangible personal property' also includes, but is not limited to, the following:

"(1)    All tangible personal property, new or used, received in pledge as security for a loan by a pawnbroker or a secondhand dealer acting as a pawnbroker.

"(2)    All tangible personal property that bears a serial number or personalized initials or inscription which is purchased by a secondhand dealer or a pawnbroker or which, at the time of such purchase, bears evidence of having had a serial number or personalized initials or inscription.

"(3)    All personal property commonly sold by secondhand dealers which statistically is found through crime reports to the Attorney General to constitute a significant class of stolen goods.  A list of such personal property shall be supplied by the Attorney General to all local law enforcement agencies.  Such list shall be reviewed periodically by the Attorney General to insure that it addresses current problems with stolen goods.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ." [4]

Does the foregoing definition of "tangible personal property" include baseball trading cards purchased by a card shop?[5]

---

whose principal business is the buying, selling, and trading of coins, monetized bullion, or commercial grade ingots of gold, or silver, or other precious metals."

A secondhand dealer must be licensed pursuant to section 21641.  Conditions imposed on the licensee are set forth in section 21642.  (§ 21643.)

[4]Depending on the manner of acquisition, some items which would otherwise be considered tangible personal property are exempt from the requirements of the Act under the terms of section 21629.

[5]We are not concerned in this opinion with baseball trading cards that might be "received in pledge as security for a loan . . . ."  (§ 21627, subd. (b)(1).)

A baseball trading card is a collectible item which typically bears a picture of a baseball player on one side of the card (usually about 2 1/2" by 3 1/2") and information about the player on the reverse side.[6] The cards may range from having little or no monetary value to substantial value depending on such factors as age, condition, the number produced, and the popularity or achievement of the player depicted. In recent years, card shops have developed substantial businesses in purchasing, exchanging, and selling the cards.

Baseball trading cards generally do not bear a serial number[7] or the player's autograph. Although a card signed by the player depicted may have some value, collectors normally regard an autograph as an alteration of the card which would not enhance (and may reduce) the card's intrinsic value. Any other extraneous markings on the card, whether initials, numbers, or an inscription, would similarly cause the loss of the card's "mint-condition" value. Other categories of personal property, in contrast, may be specially marked without a diminution in value in order to deter theft or assist in the recovery of the property if stolen.

We believe that baseball trading cards purchased by a card shop do not constitute tangible personal property for purposes of the Act, since they customarily do not bear "a serial number or personalized initials or inscription." (§ 21627, subd. (a).) This construction of the Act is consistent with the longstanding administrative interpretation of the Department of Justice, the state agency responsible for implementing sections 21625-21647, that baseball trading cards are not tangible personal property under the terms of section 21627, subdivision (a). "Unless unreasonable or clearly contrary to the statutory language or purpose, the consistent construction of a statute by an agency charged with responsibility for its implementation is entitled to great deference." (*Dix* v. *Superior Court* (1991) 53 Cal.3d 442, 460.)

Moreover, as previously indicated, it was the Legislature's purpose in enacting sections 21625-21647 "to curtail the dissemination of stolen property and to facilitate the recovery of stolen property . . . ." (§ 21625.) "In construing the words of a statute, [we are] required to read the statute in the light of the legislative objective sought to be achieved and the evil to be averted." (*People* v. *Fierro* (1991) 1 Cal.4th 173, 225.) In this regard, we note that baseball trading cards have not been determined by the Department of Justice "to constitute a significant class of stolen goods." (§ 21627, subd. (b)(3).)[8]

---

[6]Article 7 (§§ 21670-21672) of the Act, which is concerned with the authenticity of sports trading cards and is discussed below, defines "legitimate sports trading card" as "any card produced for use in commerce, that contains a company name or team logo, or both, and an image, representation, or facsimile of one or more players or other team member or members in any pose, and is produced pursuant to an appropriate licensing agreement." (§ 21670, subd. (b).)

[7]A particular card may sometimes contain a number indicating its production run but seldom, if ever, indicating the total number of cards printed.

[8]Currently only jewelry and silverware appear on the Attorney General's list.

Although tangible personal property as defined in subdivision (a) of section 21627 "includes, but is not limited to" the specifically enumerated items, we do not believe that *any* item which meets the literal definition of tangible personal property is covered by the statute.  While the quoted phrase is one of "enlargement," it must be construed here to denote other kinds of tangible personal property which lend themselves to identification of ownership consistent with section 21627's purposes.  (See *Dyna-Med, Inc.* v.  *Fair Employment and Housing Com.* (1987) 43 Cal.3d 1379, 1390-1391 [phrase, "including, but not limited to," construed as permitting certain remedies, but not others].)

We note that if baseball trading cards were considered to be tangible personal property for purposes of section 21627, subdivision (a), minors could not sell cards to, or trade cards with, card shop owners without full parental involvement (including fingerprinting), since section 21643 provides that no transactions requiring reporting under section 21628 may be executed with a minor.

However, we do not mean to suggest that baseball trading cards purchased by card shops are not subject to *any* of the Act's requirements.  Under article 7 (§§ 21670-21672) of the Act, the Legislature has addressed the dual problems of counterfeiting and fraudulent alteration of all types of sports trading cards.   The purposes of the legislation were explained by the Legislature at the time of its enactment as follows:

"The Legislature hereby finds and declares all of the following:

"(a)    A growing number of Californians are spending substantial amounts of money on sports trading cards.

"(b)    As with any commodity, there are persons in the sports trading card market who take advantage of consumers by misrepresenting the authenticity of sports trading cards.

"(c)    The integrity of the sports trading card market must be protected by requiring seller disclosure to buyers and traders of sports trading cards that have been altered or refurbished and by prohibiting the making and trafficking of unlicensed and fraudulent sports trading cards." (Stats, 1992, ch. 1120, § 1.)

Section 21671 provides civil penalties with respect to the trading of altered cards:

"(a) Any sports trading card that is altered or refurbished shall be accompanied by a certificate stating the exact work done to the sports trading card, the date the work was performed, the cost of that work, and the name, phone number, and address of the person who performed the work.

"(b) Any person or agent thereof, who knowingly sells or trades a sports card in violation of subdivision (a), shall both:

"(1) Refund to the buyer, the full amount paid for the altered or refurbished sports trading card or the full retail value of any nonmonetary consideration received in exchange for the altered or refurbished sports trading card, or both.

"(2) Be liable to the buyer for a civil penalty not to exceed five thousand dollars ($5,000) for each violation.  Each card sold represents a separate and distinct violation."

Section 21672 provides both civil and criminal penalties with respect to the distribution of counterfeit cards:

"(a) Any person, or agent thereof, who knowingly manufactures, produces, or distributes unlicensed or counterfeit sports trading cards with the intent to deceive, injure, or defraud another, is guilty of a misdemeanor.

"Any person, or agent thereof, who violates this subdivision shall do both of the following:

"(1) Refund to the buyer the full amount paid for the unlicensed or counterfeit sports trading card or the full retail value of any nonmonetary consideration received in exchange for the unlicensed or counterfeit sports trading card, or both.

"(2) Be liable to the buyer for a civil penalty not to exceed five thousand dollars ($5,000) for each violation.   Each card sold represents a separate and distinct violation.

"(b) Any person who knowingly sells a cut, unlicensed sports trading card that has been produced by cutting the card from a publication in which unlicensed sports trading cards are bound, without disclosing the source and the means of producing the card, with the intent to deceive, injure, or defraud another, is guilty of a misdemeanor.

"Any person who violates this subdivision shall do both of the following:

"(1) Refund to the buyer the full consideration paid or furnished for the cut, unlicensed sports trading card.

"(2) Be liable to the buyer for a civil penalty not to exceed five thousand dollars ($5,000) for each violation.  Each card sold represents a separate and distinct violation.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."

As baseball trading cards do not typically "bear a serial number or personalized initials or inscription" (§ 21627), do not readily lend themselves to the addition of ownership identification without adversely affecting their value, and are covered in the Act as "sports trading cards" (§§ 21670-21672), we conclude that baseball trading cards purchased by a card shop do not constitute tangible personal property for purposes of regulation under the Act.

\* \* \* \* \*