BILL LOCKYER Attorney General GREGORY L. GONOT Deputy Attorney General
THE HONORABLE LOU CORREA, MEMBER OF THE STATE ASSEMBLY, has requested an opinion on the following questions:
1. Is a "fundamental" school that has a district-wide attendance area and a "back-to-basics" curriculum, which its students and their parents must agree to support, exempt from "a random, unbiased process" in selecting pupils for enrollment when requests for admission of those meeting the entrance criteria exceed the capacity of the school?
2. Does a "first come, first served" selection policy constitute a "random, unbiased process" in selecting pupils for enrollment when requests for admission exceed the capacity of the school?
 CONCLUSIONS
1. A "fundamental" school that has a district-wide attendance area and a "back-to-basics" curriculum, which its students and their parents must agree to support, is not exempt from "a random, unbiased process" in selecting pupils for enrollment when requests for admission of those meeting the entrance criteria exceed the capacity of the school.
2. A "first come, first served" selection policy does not constitute a "random, unbiased process" in selecting pupils for enrollment when requests for admission exceed the capacity of the school.
 ANALYSIS
The two questions presented for our determination concern the open enrollment requirements of Education Code section 35160.5, subdivision (b)(2)(B)[1], as they pertain to a "fundamental school" having a "back-to-basics" curriculum. Subdivision (b) of section35160.5 provides:
 (1) On or before July 1, 1994, the governing board of each school district shall, as a condition for the receipt of school apportionments from the state school fund, adopt rules and regulations establishing a policy of open enrollment within the district for residents of the district. This requirement does not apply to any school district that has only one school or any school district with schools that do not serve any of the same grade levels.
(2) The policy shall include all of the following elements:
 (A) It shall provide that the parents or guardian of each school age child who is a resident in the district may select the schools the child shall attend, irrespective of the particular locations of his or her residence within the district, except that school districts shall retain the authority to maintain appropriate racial and ethnic balances among their respective schools at the school districts' discretion or as specified in applicable court-ordered or voluntary desegregation plans.
 (B) It shall include a selection policy for any school that receives requests for admission in excess of the capacity of the school that ensures that selection of pupils to enroll in the school is made through a random, unbiased process that prohibits an evaluation of whether any pupil should be enrolled based upon his or her academic or athletic performance. For purposes of this subdivision, the governing board of the school district shall determine the capacity of the schools in its district. However, school districts may employ existing entrance criteria for specialized schools or programs for the criteria are uniformly applied to all applicants. This subdivision shall not be construed to prohibit school districts from using academic performance to determine eligibility for, or placement in, programs for gifted and talented pupils establishedpursuant to Chapter 8 (commencing with Section 52200) of Part of 28.
 (C) It shall provide that no pupil who currently resides in the attendance area of a school shall be displaced by pupils transferring from outside the attendance area.
 (3) Notwithstanding the requirement of subparagraph (B) of paragraph (2) that the policy include a selection policy for any school that receives requests for admission in excess of the capacity of the school that ensures that the selection is made through a random, unbiased process, the policy may include any of the following elements:
 (A) It may provide that special circumstances exist that might be harmful or dangerous to a particular pupil in the current attendance area of the pupil, including, but not limited to, threats of bodily harm or threats to the emotional stability of the pupil, that serve as a basis for granting a priority of attendance outside the current attendance area of the pupil . . .
 (D) It may provide that schools receiving requests for admission shall give priority for attendance to siblings of pupils already in attendance in that school and to pupils whose parent or legal guardian is assigned to that school as his or her primary place of employment.
 (E) It may include a process by which the school district informs parents or guardians that certain schools or grade levels within a school are currently, or are likely to be, at capacity and, therefore, those schools or grade levels are unable to accommodate any new pupils under the open enrollment policy.
 (4) It is the intent of the Legislature that, upon the request of the pupil's parent or guardian and demonstration of financial need, each school district provide transportation assistance to the pupil to the extent that the district otherwise provides transportation assistance to pupils." (Italics added.)
1. Exemption from Random, Unbiased Selection Process
The first question to be addressed is whether a fundamental school with a back-to-basics curriculum is exempt from a "random, unbiased process" (§ 35160.5, subd. (b)(2)(B)) in selecting students when requests for admission exceed the capacity of the school. We conclude that it is not exempt.
Subdivision (b)(2)(B) of section 35160.5 contains two separate concepts that are relevant to our discussion. The first is "existing entrance criteria for specialized schools and programs." An example of a specialized school would be a school for gifted or talented pupils established pursuant to sections 52200-52212. Under the latter statutory scheme, the "entrance criteria" for such a school may involve "intellectual, creative, specific academic, or leadership ability; high achievement; performing and visual arts talent." (§52202.) "Entrance criteria" directly relate to the specific purpose and educational opportunities of the specialized school or program. A district may continue to employ such criteria under the section35160.5, subdivision (b)(2)(B), when requests for admission of qualified students exceed the capacity of the school.
The second aspect of subdivision (b)(2)(B) of section 35160.5
requiring our examination is the "random, unbiased process" for enrolling those pupils who meet the entrance criteria of a specialized school or program. It is only when requests for admission of qualified pupils exceed the capacity of the school that the requirement of random, unbiased enrollment need be considered. When applications of qualified students exceed the school's capacity, the pupils must be selected on a random, unbiased basis except that a limited priority may be given to certain pupils, such as those with siblings already in attendance at the school. (§ 35160.5, subd. (b)(3).)
Keeping in mind these separate concepts and applying this construction of section 35160.5, subdivision (b)(2)(B)[2] to pupil enrollments at a fundamental school, we find that a random, unbiased selection process must be followed in the circumstances presented. We are given that the only "entrance criteria" for the fundamental school are commitments by the pupils and their parents to a "back-to-basics" curriculum. The number of pupils and parents who are willing to make such commitments exceed the capacity of the school. Accordingly, all such qualified pupils must be enrolled subject to a random, unbiased selection procedure except for any priority allowed under the statute.[3]
We conclude in answer to the first question that a fundamental school that has a district-wide attendance area and a back-to-basics curriculum, which its students and their parents must agree to support, is not exempt from a random, unbiased process in selecting pupils for enrollment when requests for admission of those meeting the entrance criteria exceed the capacity of the school.
2. "First Come, First Served" Selection Policy
We next consider whether a fundamental school may employ a "first come, first served" selection policy when requests for admission of qualified students exceed the school's capacity. We conclude that such a policy would not meet the requirement of a random, unbiased selection procedure.
"Random" in the present context means "having the same probability of occurring as every other member of a set. . . ." (Webster's 3rd New Internat. Dict. (1961) p. 1880.) "Unbiased" generally means "resolute in evenness and equality. . . ." (Id at p. 2483.)
A "first come, first served" selection process would not be random or unbiased. Those who submit their applications first would be selected. They would not have "the same probability" of being selected as those who submit their applications last. Equality of selection does not exist under such a policy between those submitting their applications first and those, for whatever reason, submitting their applications last.
In 78 Ops.Cal.Atty.Gen. 332 (1995), we considered the manner in which disqualified members of a board may be selected to establish a quorum for conducting business. We concluded that a random selection by lot, drawing cards, throwing dice, flipping coins, or similar chance selection was necessary; otherwise, the selection process would not be impartial or equitable. (Id at pp. 337-339; see also Villanueva v. Carere (10th Cir. 1996) 85 F.3d 481, 488, fn. 3 [even a" "modified first come/first served' admissions procedure. . . seems to favor children of parents with the resources and the acumen to apply early."].)
Our construction of section 35160.5, subdivision (b)(2)(B), is consistent with Program Advisory No. CIL 93/94-05 (March 4, 1994), issued by the Department of Education, which determined that a first come, first served selection process would not satisfy the "random and unbiased" statutory requirement. The department's advisory states in part:
The CDE Legal Office advises that, in its opinion, a first come, first served selection process would not constitute a random and unbiased process. Whether it is random is questionable because randomness implies that everyone has an equal chance. It is definitely not unbiased, however, in that it gives certain parents an advantage over others (e.g., in a family in which only one parent works outside the home, the other parent may have the time to stand in line for two days to ensure their application is first to be accepted. A family in which both parents work would not have this same opportunity). The only California cases discussing the concept of `random and unbiased' deal with jury selection. Although jury selection by lot is not necessarily `unbiased,' these cases definitely hold that it is `random' (See, e.g., People v. Wheeler (1978) 22 Cal.3d 258, 273-278). In the present context, CDE believes that a lottery system would meet not only the test of randomness but would also be considered unbiased. It behooves districts to establish as fair and equitable a process as possible which results in a representative student population and is communicated clearly to all parents. . . ." (Id. at p. 9.)
The department's advisory represents a long-standing administrative construction of statutory language that is entitled to great weight. (See People ex rel. Lungren v. Superior Court (1996) 14 Cal.4th 294, 309; Dix v. Superior Court (1991) 53 Cal.3d 442, 460; 83 Ops.Cal.Atty.Gen. 40, 44 (2000), 80 Ops.Cal.Atty.Gen. 322, 326-327 (1997).)
We conclude that a first come, first served selection policy does not constitute a random, unbiased process in selecting pupils for enrollment when requests for admission exceed the capacity of the school.
[1] All references hereafter to the Education Code are by section number only.
[2] We interpret section 35160.5 by giving it a practical construction (see California Correction Peace Officers Assn. v. State Personnel Bd (1995) 10 Cal.4th 113, 1147) and harmonizing its various provisions (Lungren v. Deukmejian (1988) 45 Cal.3d 727, 735).
[3] It is irrelevant for our purposes that the school has a district-wide attendance area. If, for example, the school had a neighborhood attendance area, qualified students within the neighborhood could not be displaced by qualified students from outside the neighborhood. (§ 35160.5, subd. (b)(2)(C).)