Filed 3/6/23  P. v. Quezada CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

THE PEOPLE,

　　Plaintiff and Respondent,

v.

ANTONIO GONZALEZ QUEZADA,

　　Defendant and Appellant.

E079801

(Super. Ct. No. FWV08082)

OPINION

APPEAL from the Superior Court of San Bernardino County.  John Nho Trong Nguyen, Judge.  Affirmed.

Johanna Pirko, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

I.

## INTRODUCTION

Defendant and appellant Antonio Quezada appeals from a postjudgment order

1

denying his Penal Code[1] section 1172.1 (formerly section 1170, subdivision (d)(1) and section 1170.03)[2] petition for resentencing. Counsel has filed a brief under the authority of *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) and *Anders v. California* (1967) 386 U.S. 738 (*Anders*), requesting this court to conduct an independent review of the record. In addition, defendant has had an opportunity to file a supplemental brief with this court and has done so. Based on our independent review of the record for potential error and considering defendant's personal supplemental brief in support of his appeal, we affirm the trial court's denial of the petition for relief under section 1172.1.

II.

FACTUAL AND PROCEDURAL BACKGROUND[3]

On August 14, 1995, codefendant Arturo Aguilar entered a bank wearing camouflage clothing and hat and holding a revolver. Aguilar pointed the gun at the teller, told everyone to get on the ground, and instructed the tellers to put all their money on the counter.

---

[1] All future statutory references are to the Penal Code.

[2] As a result of Assembly Bill No. 1540, effective January 1, 2022 former section 1170, subdivision (d)(1), was substantively amended and redesignated as section 1170.03. (See, e.g., *People v. McMurray* (2022) 76 Cal.App.5th 1035, 1038.) Effective June 30, 2022, section 1170.03 was renumbered section 1172.1 without additional substantive change. (Stats. 2022, ch. 58, § 9.) We cite to section 1172.1 for ease of reference unless otherwise indicated.

[3] A summary of the factual background is taken from the probation officer's report.

Thereafter, defendant walked into the bank with a gun and a bag. After defendant gave the bag to Aguilar, Aguilar filled the bag with approximately $34,000.00 in cash from the tellers. A customer's fanny pack was also taken off a counter during the robbery. Defendant and Aguilar then fled.

Officer Fortin heard a dispatch call concerning the robbery and stopped the car in which defendant and Aguilar were riding because he thought they looked suspicious. While Officer Fortin was completing a field interrogation card, Aguilar put a gun to the officer's forehead and told him he was going to kill him. Defendant grabbed Officer Fortin's gun, and the two men ordered the officer not to move and to cancel the backup unit. They also told Officer Fortin "he was dead." Defendant and Aguilar then ordered Officer Fortin to lie on the ground and took the keys to the officer's patrol vehicle. After the two men got back into their car and sped away with defendant driving, Officer Fortin radioed for help.

Officer Ohlson "observed the suspect vehicle" and began pursuing it. During the pursuit, Aguilar shot at Ohlson's car, in which Officers Thouvenell and Mora were also passengers. No officer was struck by the bullets. Aguilar and defendant eventually abandoned their car, and officers pursued them on foot. When officers approached Aguilar, who was lying on the ground, they saw he had a fatal gunshot wound to his head. Defendant eventually surrendered. Officers found the stolen money from the bank and "other victim's property" in the car.

3

At the time of his interview with the probation officer, defendant had been diagnosed with schizophrenia. He was seeing and hearing voices, and was taking the medication Haldol.

On September 18, 1998, a jury found defendant guilty of four counts of second degree robbery (§ 211; counts 1, 3, 4, & 8); assault with a deadly weapon (§ 245, subd. (a)(1); count 5); assault on a peace officer or firefighter with a deadly weapon (§ 245, subd. (c); count 6); criminal threats (§ 422; count 7); and evading a peace officer in willful disregard for safety (Veh. Code, § 2800.2; count 12). The jury found true the enhancement allegation that defendant personally used a firearm (§ 12022.5, subd. (a)) during the commission of counts 1, 3, 4, 5, 6, 8, and 12. The trial court declared a mistrial on counts 9, 10, 11, and 13, and took under submission defendant's motion to dismiss these counts. Defendant waived his right to a jury trial on the truth of the prior conviction allegation, and on whether he was "not guilty by insanity."

On November 20, 1998, defendant pleaded guilty to the lesser offenses of assault with a firearm on a peace officer as charged in counts 9, 10, and 13. He also admitted to having suffered a prior serious felony (§ 667, subd. (a)) conviction. In exchange for his plea, defendant was to receive a total prison sentence of between 30 and 35 years. Defendant also withdrew his "'insanity' plea," and the trial court agreed to recommend initial custody at a medical facility.

On December 17, 1998, the court sentenced defendant to 35 years in prison and dismissed the firearm use enhancements attached to counts 9, 10, and 13. The court again recommended that defendant "be placed in a state hospital/medical facility."

On August 10, 1999, defendant's sentence was modified with his total sentence reduced to 34 years in prison. The court again recommended that defendant be housed in a state hospital.

In a letter dated July 14, 2022, which was addressed to the Office of the District Attorney and the San Bernardino Superior Court, defendant appeared to request that the district attorney or the "CDCR Secretary" recommend to the court that he be resentenced under former section 1170, subdivision (d)(1). Defendant asserted he had "demonstrated exceptional in-custody behavior," and that "changed circumstances demonstrat[ed]" his "continued incarceration is not in the interests of justice." In support, defendant attached certificates of completions of educational programs, reference letters, and other documents showing his performance while in prison. In his letter, defendant also referred to Senate Bill No. 620, which provided courts with discretion to strike firearm enhancements.

On July 22, 2022, the trial court noted receipt of defendant's letter and appointed counsel to represent defendant.

At a hearing held on August 12, 2022, the trial court noted that defendant was relying on former section 1170.03 to support his purported petition for resentencing. The prosecutor explained that neither the California Department of Corrections and Rehabilitation (CDCR) nor the Office of the District Attorney had requested recall and resentencing, and that defendant did not have the ability to independently make the request. Defendant's appointed counsel agreed the court did not have the "authority to resentence [defendant] based on his request." The court thereafter denied defendant's request to be resentenced. Defendant timely appealed.

III.

DISCUSSION

After defendant appealed, appointed appellate counsel filed a brief under the authority of *Wende*, *supra*, 25 Cal.3d 436 and *Anders*, *supra*, 386 U.S. 738, setting forth a statement of the case and a summary of the procedural background. Counsel considered potential issues on appeal but found no specific arguments as grounds for relief, and requests that we exercise our discretion and independently examine the appellate record for any arguable issues.

We offered defendant an opportunity to file a personal supplemental brief, and he has done so. In his supplemental letter brief, defendant argues (1) the trial court erred in denying his request for resentencing under section 1172.1; (2) the trial court should exercise its discretion to strike the firearm enhancements pursuant to Senate Bill No. 620;

6

and (3) he should never have been sentenced to prison because he was mentally unstable and the court had recommended he be housed in a mental facility.

Preliminarily, we note that our Supreme Court recently held the procedures set out in *Wende* do not apply to an appeal from post-judgment orders. (*People v. Delgadillo* (2022) 14 Cal.5th 216, 222.) However, "[w]hen appointed counsel finds no arguable issues to be pursued on appeal: (1) counsel should file a brief informing the court of that determination, including a concise recitation of the facts bearing on the denial of the petition; and (2) the court should send, with a copy of counsel's brief, notice to the defendant, informing the defendant of the right to file a supplemental letter or brief and that if no letter or brief is filed within 30 days, the court may dismiss the matter. [Citations.] [¶] If the defendant subsequently files a supplemental brief or letter, the Court of Appeal is required to evaluate the specific arguments presented in that brief and to issue a written opinion. The filing of a supplemental brief or letter does not compel an independent review of the entire record to identify unraised issues." (*Id*. at pp. 231-232.) Nonetheless, "the Court of Appeal is not barred from conducting its own independent review of the record in any individual" post-judgment appeals. (*Id*. at p. 232.)

The appellate review procedures employed here conform to those required under *Delgadillo*. Defendant was served with counsel's brief indicating no arguable issues were identified for appeal, this court issued a letter inviting defendant to file his own

7

personal letter or brief and he did so.[4]  In addition to considering the issues raised in defendant's personal brief, we have conducted an independent review of the record. (*People v. Delgadillo*, *supra*, 14 Cal.5th at p. 232.)

As previously noted, Assembly Bill No. 1540 (2021-2022 Reg. Sess.) came into effect on January 1, 2022, and moved the recall and resentencing provisions of former section 1170, subdivision (d)(1) to former section 1170.03.  (Stats. 2021, ch. 719, §§ 1-7.) Effective June 30, 2022, the Legislature passed Assembly Bill No. 200 (2021-2022 Reg. Sess.) that, among other things, renumbered former section 1170.03 as section 1172.1 with no change in text.  (Stats. 2022, ch. 58, § 9.)

Former section 1170, subdivision (d)(1) authorized the court, in relevant part, to "at any time upon the recommendation of the secretary . . . in the case of state prison inmates, . . . [to] recall the sentence and commitment previously ordered and resentence the defendant in the same manner as if they had not previously been sentenced, provided the new sentence, if any, is no greater than the initial sentence."  (Stats. 2020, ch. 29, § 14.)  This provision thus created "an exception to the common law rule that the court loses resentencing jurisdiction once execution of sentence has begun."  (*Dix v. Superior Court* (1991) 53 Cal.3d 442, 455.)  The trial court may recall a sentence on its own

---

[4] This court's notice to defendant did not inform him the appeal could be dismissed if he did not file a personal brief.  However, since defendant filed his own personal brief, which we now evaluate and address on its merits, the lack of notice of potential dismissal had no effect on the disposition of the appeal and caused no harm to defendant.

motion within 120 days for any reason rationally related to lawful sentencing. (*Id.* at p. 456.)

Newly enacted section 1172.1, subdivision (a)(1) maintains the language of former section 1170, subdivision (d)(1) and provides, in pertinent part, that "the court may, within 120 days of the date of commitment on its own motion, at any time upon the recommendation of the secretary or the Board of Parole Hearings in the case of a defendant incarcerated in state prison [or] the district attorney of the county in which the defendant was sentenced . . . recall the sentence and commitment previously ordered and resentence the defendant in the same manner as if they had not previously been sentenced . . . ." (§ 1172.1, subd. (a)(1); see *People v. McMurray*, *supra*, 76 Cal.App.5th at p. 1040; *People v. Cepeda* (2021) 70 Cal.App.5th 456, 464.)

In this case, defendant filed his request for relief on July 14, 2022, well after 120 days following the date of his commitment. Moreover, neither the Board of Parole Hearings nor the Secretary of CDCR nor the district attorney recommended defendant be resentenced. Therefore, defendant was not entitled to relief pursuant to section 1172.1.

As to defendant's contentions regarding Senate Bill No. 620 and his sentence to state prison rather than a state mental hospital, those claims are not properly before us. Because defendant appealed from a denial of his request for resentencing pursuant to section 1172.1, he could only raise issues related to the denial of that request for relief. Furthermore, defendant cannot use the resentencing procedures established by section

9

1172.1 to challenge his sentence to state prison as opposed to being committed to a state mental hospital. Thus, defendant's remaining arguments are improper.

IV.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

McKINSTER
Acting P. J.

MILLER
J.

10