Filed 1/22/25  P. v. Campbell CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>LARON DESEAN CAMPBELL,<br><br>    Defendant and Appellant. | H050890<br>(Santa Clara County<br>Super. Ct. No. B1577257) |

In this second appeal by defendant Laron Desean Campbell, we address Campbell's claims of error on remand for resentencing in light of ameliorative changes to sentencing laws.  The trial court in resentencing Campbell imposed a total sentence of 30 years.

Campbell argues in part that the trial court abused its discretion in declining to strike under Penal Code section 1385[1] a 10-year firearm enhancement.  We will reverse and remand the matter for resentencing because the trial court did not follow the statutory mandate to consider as a mitigating factor that the firearm enhancement "could result in a sentence of over 20 years."  (§ 1385, subd. (c)(2)(C) (§ 1385(c)(2)(C).)[2]

---

[1] Undesignated statutory references are to the Penal Code.

[2] Concurrently with his opening brief in this appeal, Campbell petitioned this court for writ of habeas corpus, which we ordered considered with this appeal.  We have denied the petition by separate order filed this day (H051914).

## I.     BACKGROUND

### A.     *Campbell's Convictions and the Original Sentencing*[3]

The trial court originally imposed an aggregate sentence of 49 years for three cases, case numbers B1577257, B1685118, and C165238.

#### 1.     *Case Number B1577257*

Campbell was tried to a jury in case number B1577257, involving two home-invasion robberies in August and November 2014, respectively.

The evidence presented at trial showed that in August 2014, Campbell and another man broke into a home in Fremont at night.  Campbell was armed with a gun, and the two men stole jewelry, cash, and an ATM card from the residents.  The two men told the victims to stay in their bathroom for 30 minutes; Campbell threatened to kill them if they reported the robbery, and the other man put the victims' cell phones and home phone into a sink filled with water.  This incident formed the basis for counts 8 through 13.

The evidence at trial showed that in November 2014, Campbell and another man broke into a home in Cupertino at night.  Campbell was again armed, and the two men took cash, a cell phone, and a watch.  Campbell told one of the two victims to cooperate, warning him, "You don't want me to shoot your wife" and "you don't want us to . . . hurt your children."  Before fleeing, the two men also threatened the wife, telling her they would return if she called the police.  After the men left, the husband tried to call the police from the home's landline phone and realized that the phone line had been pulled out.  This incident formed the basis of counts 1 through 7.

The jury convicted Campbell of four counts of first degree robbery (§§ 211–212.5, subd. (a); counts 1, 2, 8, and 9), four counts of false imprisonment (§§ 236–237; counts 3, 4, 10, and 11), one count of disconnecting a telephone line (§ 591; count 5), and four

---

[3] We granted Campbell's request for judicial notice of the appellate record, filings, and opinion in his prior appeal.  (*People v. Campbell* (Apr. 29, 2021, H044517) [nonpub. opn.].)

counts of criminal threats (§ 422; counts 6, 7, 12, and 13). The jury further found true as to the four robbery convictions that Campbell had personally used a firearm during the commission of the robberies (§ 12022.53, subd. (b)). Campbell admitted that he served two prior prison terms (former § 667.5, subd. (b)) and that he had a prior conviction that constituted both a strike conviction (§§ 667, subds. (b)–(i); 1170.12, subds. (a)–(d)) and a serious felony conviction (§ 667, subd. (a)(1)).

For this case, the trial court in December 2016 sentenced Campbell to an aggregate term of 46 years 4 months:

- 22 years for count 1 (the upper term of six years, doubled to 12 under the Three Strikes law, plus an additional 10 years for the firearm enhancement);
- Three consecutive six-year terms on counts 2, 8, and 9 (one-third the middle term of four years, doubled, plus one-third the 10-year term of the firearm enhancement);
- A consecutive 16 months on count 5 (one-third the middle term of two years, doubled); and
- A consecutive five years for the prior serious felony enhancement.

The court imposed but stayed sentences for counts 3, 4, 6, 7, and 10 through 13. The court also struck the punishment for the two prior prison term enhancements.

At the same sentencing hearing, the trial court sentenced Campbell for two other cases in which Campbell had pleaded no contest.

### 2. *Case Number B1685118*

In case number B1685118, Campbell pleaded no contest to a charge of attempted first degree burglary (§§ 664, 459–460, subd. (a)) and admitted the allegation that he had a prior strike conviction (§ 667, subds. (b)–(i); 1170.12). Campbell had admitted during his trial in case number B1577257 that he had committed attempted burglary of a residence in Palo Alto.

The trial court sentenced Campbell to a consecutive 16-month term (one-third the middle term, doubled) for the attempted burglary.

### 3.    *Case Number C1652328*

In case number C1652328, Campbell pleaded no contest to escape from jail after conviction (§ 4532, subd. (b)(1); count 1) and destroying jail property (§ 4600, subd. (a); count 2) and admitted that he had three prior strike convictions (§§ 667, subds. (b)–(i); 1170.12) and had served two prior prison terms (former § 667.5, subd. (b)).

In December 2016, after imposing the sentence in case numbers B1577257 and B1685118, the trial court imposed a consecutive 16-month term for count 1 (one-third the middle term, doubled) and a concurrent 32-month term for count 2 (the low term, doubled).  The trial court struck the punishment for the former section 667.5, subdivision (b) enhancements.

### B.    *Campbell's First Appeal*

Campbell appealed from the judgment in all three cases, raising claims of sentencing error.  On appeal, a different panel of this court held that remand was required because of ameliorative sentencing legislation retroactively applied to Campbell's not-yet-final judgment:  (1) Senate Bill No. 620 (2017–2018 Reg. Sess.) had amended section 12022.53, subdivision (h) to empower the trial court to dismiss a firearm enhancement in furtherance of justice under section 1385; Senate Bill No. 1393 (2017–2018 Reg. Sess.) had amended sections 667 and 1385 to empower the trial court to strike serious felony enhancements alleged under section 667, subdivision (a); and finally Senate Bill No. 136 (2019–2020 Reg. Sess.) limited former section 667.5, subdivision (b) enhancements to certain sexually violent offenses.

### C.    *Proceedings at Resentencing*

On remand, Campbell presented evidence of both his rehabilitation in prison and his experience of childhood trauma.  A 20-year veteran correctional lieutenant recommended a reduced sentence as "a second chance" that Campbell "deserves."  The

4

prison official wrote of "the . . . pleasure of getting to know and interact with . . . Campbell . . . not just as another number but also as a person" to whom "other inmates look up to as a source of counseling, inspiration[,] and as a role model." A prison chaplain wrote, "As a citizen or [c]haplain, I have not [met] a more contributing community member than inmate Campbell." Campbell also presented evidence of his childhood trauma—born in jail, he was a dependent of the juvenile court from infancy and cycled through a series of foster homes and group homes. Seeking a sentence below 20 years, Campbell argued that section 1385(c)(2)(C) required the court to strike all the firearm enhancements and his prior serious felony enhancement because their application would result in a sentence of over 20 years. Campbell also argued that the trial court should apply still-newer legislation, Senate Bill No. 567 (2021–2022 Reg. Sess.), which had amended the determinate sentencing law (section 1170).

At the resentencing hearing in January 2023, the trial court imposed an aggregate term of 30 years in prison. The reduction of 19 years from the original judgment derived from the following choices in case number B1577257:

- In case number B1577257, for the principal term (robbery, count 1), the trial court selected the four-year middle term (rather than the six-year upper term), doubled by the strike prior to eight years (rather than 12).

- Although the court declined to strike the 10-year punishment for the firearm enhancement as to count 1, it did strike the punishments for the corresponding firearm enhancement as to the subordinate robbery counts (counts 2, 8, and 9) rather than impose one-third the 10-year term per count.

- The trial court also struck the five-year punishment for the serious felony enhancement under section 667, subdivision (a).

In all other respects, the trial court made the same sentencing choices it had originally.

In choosing the middle term for count 1 in case number B1577257, the trial court noted the nature and circumstances of the offenses, Campbell's involvement and participation in the crimes, and the sophistication and planning that were evident in how the crimes were committed.  It concluded that in the "interest of justice in balancing the contributing mitigating factors" of Campbell's childhood trauma and youth, it believed that the appropriate term was the middle term of four years for count 1, doubled under the Three Strikes law to eight years.

In reimposing the 10-year firearm enhancement as to count 1, the trial court found that section 1385(c)(2)(C)) did not apply.  The court reasoned that "it is not the application of a [section] 12022.53 sub[division] (b) gun enhancement allegation that could result in a sentence of greater than 20 years."  The court also found that Campbell had not demonstrated that imposition of the 10-year enhancement resulted in a racial disparity.  Deeming it a "closer question" whether childhood and psychological trauma had "substantially contributed" to his criminal conduct, the court ultimately decided against striking the firearm enhancement, considering "the manner in which the firearm was wielded, the manner in which it was used to exercise control, impose fear upon the victims, and the defendant's totality of his conduct both in these current cases and his prior cases involving the use of weapons, particularly firearms."

In reimposing a consecutive term of 16 months for the violation of section 591 (count 5), the trial court found that disconnecting the phone line was a "separate course of conduct that heightened danger and risk to the victims and imposed additional trauma and suffering upon them" in that "the defendant and his copart[icipant] took actions to deprive the victims in this case of the ability . . . to call for emergency services, in addition to the force and fear and terrorizing behavior that they inflicted upon the victims at the time."  Among the counts for which the court did stay the sentences under section 654 were the criminal threats (counts 6, 7, 12, and 13) and false imprisonment (counts 3, 4, 10, and 11).

6

## II.    DISCUSSION

**A.    *The Firearm Enhancement***

Campbell argues that the trial court prejudicially abused its discretion in declining to dismiss the 10-year firearm enhancement for count 1 in case number B1577257.  We agree that remand for resentencing is required.

Section 1385 has long empowered trial courts to dismiss an action or an enhancement "in furtherance of justice."  (§ 1385, subd. (a).)  As added by Senate Bill No. 81 (2021–2022 Reg. Sess.) and renumbered by Assembly Bill No. 200 (2021-2022 Reg. Sess.), subdivision (c)(2) of section 1385 now requires that a court considering whether to dismiss an enhancement, "shall consider and afford great weight to" proof of specified "mitigating circumstances":  "Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety."  The specified mitigating circumstances include any circumstance where "application of [the] enhancement could result in a sentence of over 20 years.  In this instance, the enhancement shall be dismissed." (§ 1385(c)(2)(C).)

But for the 10-year firearm enhancement as to count 1 in case number B1577257, Campbell's total prison time in that case alone would have been 17 years and four months, and his total prison time in all three cases combined would have been 20 years. So whether measured by individual case or by the three cases in combination, "application of [the] enhancement could result in a sentence of over 20 years." (§ 1385(c)(2)(C).)  The trial court, however, believed this mitigating factor to be inapplicable.  The Attorney General appropriately concedes that the trial court was mistaken.

The Attorney General nonetheless argues that Campbell cannot demonstrate that he would have obtained a more favorable result had the trial court considered this mitigating factor, suggesting that reversal is required only if Campbell has demonstrated

7

prejudicial error under *People v. Watson* (1956) 46 Cal.2d 818, 836.  Assuming that the specific "shall be dismissed" provision of section 1385(c)(2)(C) remains qualified by the general statutory provision for public safety and the furtherance of justice (see, e.g., *People v. Lipscomb* (2022) 87 Cal.App.5th 9, 18–19), the fact remains that the court here did not acknowledge application of a specified mitigating factor that is as a matter of law entitled to "great weight" and consequently did not observe the manner by which the Legislature has now sought to inform the exercise of judicial discretion.  " 'Defendants are entitled to sentencing decisions made in the exercise of the "informed discretion" of the sentencing court.  [Citations.]  A court which is unaware of the scope of its discretionary powers can no more exercise that "informed discretion" than one whose sentences is or may have been based on misinformation regarding a material aspect of a defendant's record.'  [Citation.]  In such circumstances, . . . the appropriate remedy is to remand for resentencing unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.' " (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391 (*Gutierrez*).  The *Watson* standard thus has no application to the error the Attorney General conceded here.  (See *People v. Lynch* (2024) 16 Cal.5th 730, 774 [distinguishing *Gutierrez* from *Watson* and declining to limit *Gutierrez*'s "clearly indicated" standard to only "substantial" alterations of a court's discretion].)  When a sentencing court acts without knowing the scope of its discretion, " 'it is almost always speculative for a reviewing court to say what the sentencing court would have done.' " (*Ibid.*)

This is not a case where the record " 'clearly indicate[s]' " that the trial court would have made the same decision had it considered this mitigating factor.  (*Gutierrez*, *supra*, 58 Cal.4th at p. 1391.)  Although the trial court at sentencing identified numerous aggravating factors, its determination that section 1385(c)(2)(C) did not apply signifies that it afforded *no* weight to this mitigating factor.  And the record does not suggest that the court considered the aggravating factors to be so weighty as to resist mitigation.

8

Indeed, the trial court did exercise its discretion under section 1385 to strike punishments for the firearm enhancements attached to counts 2, 8, and 9. So it is unclear whether the trial court would have reached the same decision on the firearm enhancement attached to count 1 had it understood that section 1385(c)(2)(C) applied. Reversal is accordingly necessary for the trial court to reconsider its application of section 1385(c)(2)(C).[4] And on remand, the trial court must conduct a full resentencing and reconsider its sentencing choices as to all counts. (*People v. Buycks* (2018) 5 Cal.5th 857, 893.)

**B.** ***Campbell's Other Claims of Sentencing Error***

Campbell also contends that (1) the trial court abused its discretion in selecting the middle term for count 1 despite section 1170, subdivision (b)(6) and Campbell's history of childhood trauma and (2) the court's imposition of sentence on count 5 was unsupported by sufficient evidence of an independent criminal objective under section 654.

In selecting the base term, the trial court noted the "substantial evidence . . . that childhood trauma and psychological trauma has contributed to Mr. Campbell's criminal conduct, including his criminal conduct in this case." And section 1170, subdivision (b)(6) requires the lower term "unless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice." The court expressed its appreciation for the "rare and almost unprecedented" volume of post-offense rehabilitation evidence presented by the defense, but it concluded that the aggravating circumstances relating to the offense conduct would make selection of the low term unjust. Because we reverse and remand on other grounds for full resentencing, the trial court will consider the totality

---

[4] Our reversal on the conceded error makes it unnecessary to address Campbell's additional theories of error in the trial court's decision to not strike the 10-year firearm enhancement as to count 1.

9

of circumstances then before it, including any relevant information not previously available.  (See *Dix v. Superior Court* (1991) 53 Cal.3d 442, 460 [when case is remanded for resentencing, defendant is "entitled to 'all the normal rights and procedures available at his original sentencing' [citations], including consideration of any pertinent circumstances which have arisen since the prior sentence was imposed"].)  So it would be premature for us to reach the merits of Campbell's challenge to the court's discretionary selection of the base term.

In imposing a consecutive sentence for count 5, the trial court acknowledged section 654 but appeared to rely on the "heightened danger and risk to the victims" and their "additional trauma and suffering" rather than whether the "course of conduct" that included the robbery and the disconnection of the phone line "reflects a single ' "intent and objective" ' or multiple intents and objectives."  (*People v. Corpening* (2016) 2 Cal.5th 307, 311.)  The Attorney General at oral argument acknowledged that the People's only evidence that count 5 reflects a different intent than the robbery is the very act of unplugging the phone at an unknown point in time and the lack of necessity for doing so to effectuate the robbery.  The Attorney General also acknowledged that the court in staying the sentences for the criminal threats in both the Fremont and Cupertino robberies implicitly determined that threats to retaliate if the victims reported the robberies reflected a "single ' "intent and objective" ' " common to the robberies and that deterring the victims from reporting the robberies was indivisible from the robberies themselves.  (*Corpening*, at p. 311.)  Campbell maintains that the court's treatment of the criminal threats is thus logically inconsistent with its treatment of count 5.

Because the trial court did not previously have the benefit of Campbell's appellate arguments under section 654, however,[5] we consider it appropriate for the trial court to address these points in the first instance on remand.

### III.  DISPOSITION

The judgment is reversed and remanded for full resentencing.

---

[5]Campbell's appellate counsel suggests that trial counsel was constitutionally ineffective in failing to raise the issue.  Not so.  On this record, trial counsel could reasonably have decided that identifying the inconsistency in the trial court's section 654 determinations risked spurring the court to reconsider its decision to stay the criminal threats sentences in the Fremont case.  (See, e.g., *People v. Hooker* (1967) 254 Cal.App.2d 878, 880, disapproved of on a different point as stated in *People v. Corey* (1978) 21 Cal.3d 738, 746.)

_____

LIE, Acting P. J.

WE CONCUR:

_____

WILSON, J.

_____

BROMBERG, J.

*People v. Campbell*
H050890