Filed 5/1/25  P. v. Zepeda CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>LETICIA MARIE MONTOYA ZEPEDA,<br><br>Defendant and Appellant. | B336320<br><br>(Los Angeles County Super. Ct. No. PA066801) |

APPEAL from an order of the Superior Court of Los Angeles County, Hayden A. Zacky, Judge.  Affirmed.

Heather E. Shallenberger, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Idan Ivri, Supervising Deputy Attorney General, David A. Wildman, Deputy Attorney General, for Plaintiff and Respondent.

In 2012, a jury convicted appellant Leticia Marie Montoya Zepeda (Montoya)[1] of first degree premeditated murder, and she was sentenced to 51 years to life.  In 2022, the Secretary of the California Department of Corrections and Rehabilitation (CDCR) recommended recall of her sentence and resentencing pursuant to Penal Code, section 1172.1, subdivision (a)(1)[2] based on her exceptional conduct during incarceration.  The resentencing court recalled Montoya's sentence, dismissed three enhancements, and resentenced her to 25 years to life.  Montoya appeals from the recall and resentencing order.  We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND[3]

**A.    Trial, Sentencing, and Direct Appeal**

"At about 2:00 a.m. on December 28, 2008, Kevin Montenegro, Nick Perez, and Abraham Guerrero were standing outside Guerrero's house on Correnti Street in Pacoima.  A white car drove by the house, made a U-turn, and returned with its headlights off.  A rifle was protruding from the front passenger window.  The car stopped and the front passenger asked the men

---

[1]    Appellant changed her last name to Zepeda after trial.  We refer to her as "Montoya" because it is her preferred surname and because our prior opinions referred to her by this name.

[2]    In this opinion, undesignated statutory references are to the Penal Code, and undesignated references to rules are to the California Rules of Court.

[3]    Much of the background and procedural history is taken from our opinion in Montoya's direct appeal from her conviction, *People v. Montoya* (Jan. 7, 2015, B243042) [nonpub. opn.] (*Montoya I*), and our opinion in *People v. Zepeda* (Nov. 21, 2022, B299071) [nonpub. opn.] (*Montoya II*), which involved a petition for resentencing under section 1172.6.

where they were from.  Perez replied, ""We are not from anywhere."" Perez grabbed the barrel of the rifle and tried to wrestle it away.  Three or four shots were fired, and Perez let go of the barrel.  Guerrero was shot in the arm and chest and died from his injuries." (*Montoya I, supra*, at pp. 2–3.)

Montoya, a member of the PSSL gang, drove the car, and Sergio Flores, a fellow gang member, pulled the trigger. (*Montoya I, supra*, at pp. 4–5.)  Earlier, the two had discussed recent violent altercations with rival gang members, and "both felt they had to do something." (*Ibid*.)  After the shooting, Montoya told the gang's shot-caller, Jose Andalon, that she accompanied Flores to retrieve a rifle from his home, and she drove Flores and another gang member to the place where they believed rival gang members were congregating.  (*Id*. at p. 5.) Flores reported to Andalon that he had killed a rival gang member.  (*Id*. at p. 4.)

Montoya and Flores "were tried for willful, deliberate and premeditated murder (§ 187, count 1) and shooting from a motor vehicle (former § 12034, subd. (b), count 3))." (*Montoya II, supra*, at pp. 2–3, fns. omitted.)  "Firearm allegations were included in count 1 (§§ 12022.53, subds. (b), (c), (d), (e)(1)), and criminal street gang allegations were included in counts 1 and 3 (§ 186.22, subd. (b)(1)(c))." (*Id*. at p. 3.)  "The jury was presented with two theories of direct aiding and abetting with regards to Montoya and the first degree murder charge: (1) aiding and abetting a willful, deliberate, and premeditated murder and (2) aiding and abetting a first degree murder committed by means of shooting from a motor vehicle." (*Id*. at p. 4, citing § 189, subd. (a).)  The jury was also presented with the natural and probable consequence theory.  (*Id*. at p. 4.)

3

The jury found Montoya guilty in count 1 of first degree murder, and in count 3 of shooting from a motor vehicle, with sustained findings on the firearm and criminal street gang allegations. (*Montoya II, supra*, at p. 4.) Montoya also was found to have suffered a prior prison term. (*Ibid.*) The court sentenced her to 51 years to life, consisting of 25 years to life for murder, 25 years to life for the gang and firearm enhancements, and one year for the prior prison term. The sentence on count 3, shooting from a motor vehicle, was stayed under section 654. (*Ibid.*)

In her direct appeal, Montoya challenged the admissibility of her extrajudicial statements to Andalon and a jury instruction about the natural and probable consequences doctrine. (*Montoya I, supra*, at pp. 9, 20.) We found no reversible error in admitting the statements (*id.* at pp. 11–12), and though we found instructional error, we concluded it was harmless.[4] (*Id.* at p. 22.) We modified the judgment to correctly reflect custody credits and affirmed it as modified. (*Id.* at p. 23.)

## B.    Petition for Resentencing Under Section 1172.6

In 2019, Montoya filed a petition for resentencing under former section 1170.95 (now section 1172.6). (*Montoya II, supra*, at p. 6.) The resentencing court summarily denied the petition

---

[4]    We explained: "[Montoya's] actions were identical to those of Flores, except that she drove the car while he pulled the trigger. The evidence showed that after actively planning and preparing to kill rival gang members on Correnti Street, Montoya and Flores executed their plan by going to that location and committing a drive-by shooting against suspected rival gang members. By her own conduct and incriminating statements to Andalon, Montoya demonstrated that she possessed the necessary mental state to be convicted of first degree premeditated murder." (*Montoya I, supra*, at pp. 21–22.)

without appointing counsel or holding a hearing (*ibid*.), and we affirmed. (*People v. Zepeda* (July 20, 2020, B299071) [nonpub. opn.], review granted, Sept. 30, 2020, S264170.) Our high court granted Montoya's petition for review and ordered us to vacate our decision and reconsider the cause in light of *People v. Lewis* (2021) 11 Cal.5th 952. (*People v. Zepeda* (Oct. 12, 2022, S264170) [nonpub. opn.].) In November 2022, we reversed the lower court's order and remanded with instructions for it to appoint counsel for Montoya, issue an order to show cause, and proceed in accordance with section 1172.6. (*Montoya II, supra*, at p. 13.)

In March 2023, the resentencing court set a hearing on the possible modification of Montoya's sentence pursuant to section 1172.6.

## C. The CDCR Recommends Recall and Resentencing

On December 14, 2022, the secretary of the CDCR wrote to the superior court to provide it with the authority to resentence Montoya pursuant to section 1172.1, subdivision (a)(1) based on her "exceptional conduct while incarcerated." The letter did not recommend a particular sentence. However, the People understood the CDCR to be recommending a time-served sentence.

The resentencing court appointed counsel for Montoya. At a conference in September 2023, it acknowledged three pending resentencing matters: (1) dismissal of the prior prison term, firearm use, and street gang enhancements (§§ 1172.75, 667.5, subd. (a)); (2) resentencing under section 1172.6; and (3) resentencing after receipt of the CDCR letter (§ 1172.1). The People and Montoya jointly proposed that the court reduce the first degree murder conviction to a second degree murder

conviction with a sentence of 15 years to life and that Montoya forego relief under section 1172.6. The court set a hearing on recall and resentencing pursuant to the CDCR letter and for setting an order to show cause on section 1172.6 relief. The People and Montoya filed briefs.

At the hearing, 15 people gave statements about Montoya's rehabilitation. By all accounts, she was a model prisoner. Montoya gave a statement and expressed remorse. The victim's family was represented by counsel, and his relatives gave statements or had written statements read on their behalf. They reminded the court that Guererro, who was 22 when he died, had not been a gang member or drug user. He had participated in the Los Angeles Police Department's Explorer program for years with aspirations of a career in law enforcement. None expressed support for a reduction of Montoya's sentence, and some affirmatively opposed leniency.

The resentencing court dismissed the prior prison term, street gang, and firearm use enhancements. It did not alter the first degree murder conviction and sentenced Montoya to 25 years to life.[5] Montoya appealed from the resentencing order. She argues that the resentencing court improperly relied on the statements from Guererro's relatives, and the order was "arbitrary because the overwhelming evidence of [Montoya's] exemplary rehabilitation far outweighs the continued feelings of loss experienced by the victim's family."

---

[5] The trial court continued the section 1172.6 proceedings. It set a schedule for the parties to file evidentiary briefs and a January 31, 2024 review hearing.

## DISCUSSION

### A. Governing Law

The statutory recall and resentencing procedure are "an exception to the common law rule that the court loses resentencing jurisdiction once execution of sentence has begun." (*Dix v. Superior Court* (1991) 53 Cal.3d 442, 455.) Section 1172.1, subdivision (a)(1) authorizes a trial court, "at any time upon the recommendation of" the CDCR to "recall the sentence and commitment previously ordered and resentence the defendant in the same manner as if they had not previously been sentenced, whether or not the defendant is still in custody, and provided the new sentence, if any, is no greater than the initial sentence." The court is empowered, in the interest of justice, to "[r]educe a defendant's term of imprisonment by modifying the sentence." (§ 1172.1, subd. (a)(3)(A); *People v. McMurray* (2022) 76 Cal.App.5th 1035, 1040 (*McMurray*) [CDCR recommendation under former § 1170.03[6] furnishes the court with jurisdiction it would not otherwise have to recall and resentence and is an invitation to the court to exercise its equitable jurisdiction].)

When a request for recall and resentencing is initiated, the statute provides for "a presumption favoring recall and resentencing of the defendant, which may only be overcome if a court finds the defendant is an unreasonable risk of danger to public safety . . . ." (§ 1172.1, subd. (b)(2); *McMurray, supra*, 76 Cal.App.5th at p. 1040.) This presumption, however "is intended to apply to the initial determination of whether to grant a request

---

[6] Recall and resentencing language appeared in former section 1170, subdivision (d)(1). This language was moved to section 1170.03, which was renumbered as section 1172.1. (See *People v. E.M.* (2022) 85 Cal.App.5th 1075, 1080 and fn. 3.)

7

to recall and resentence, but . . . the sentence ultimately imposed by the court is left to its discretion without any further application of the presumption." (*People v. Braggs* (2022) 85 Cal.App.5th 809, 819.)  In this case, the People conceded they could not overcome the presumption with evidence that Montoya posed an unreasonable risk of danger to public safety, and the resentencing court in fact recalled Montoya's sentence and resentenced her.  Thus, we focus on the particular terms of the new sentence.

A court, in recalling and resentencing under subdivision (a) of section 1172.1, "shall apply the sentencing rules of the Judicial Council and apply any changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing."  The Judicial Council's sentencing rules (see rule 4.401, et seq.) state that the "[g]eneral objectives of sentencing include: (1) Protecting society; [¶] (2) Punishing the defendant; [¶] (3) Encouraging the defendant to lead a law-abiding life in the future and deterring him or her from future offenses; [¶] (4) Deterring others from criminal conduct by demonstrating its consequences; [¶] (5) Preventing the defendant from committing new crimes by isolating him or her for the period of incarceration; [¶] (6) Securing restitution for the victims of crime; [¶] (7) Achieving uniformity in sentencing; and [¶] (8) Increasing public safety by reducing recidivism through community-based corrections programs and evidence-based practices." (Rule 4.410(a).) "Because in some instances these objectives may suggest inconsistent dispositions, the sentencing judge must consider which objectives are of primary importance in the particular case. The sentencing judge should be guided by statutory statements of

policy, the criteria in these rules, and any other facts and circumstances relevant to the case." (Rule 4.410(b).)

Relevant to this appeal, when resentencing pursuant to section 1172.1, the court also "shall consider postconviction factors, including, but not limited to, the disciplinary record and record of rehabilitation of the defendant while incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the defendant's risk for future violence, and evidence that reflects that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice." (§ 1172.1, subd. (a)(5).)

In general, we review a trial court's sentencing decisions for abuse of discretion. (*People v. Gonzalez* (2024) 107 Cal.App.5th 312, 323.) "'In reviewing for abuse of discretion, we are guided by two fundamental precepts. First, "'[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.'" [Citations.] Second, a "'decision will not be reversed merely because reasonable people might disagree. "An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge."'" [Citation.] Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it.'" (*People v. Strother* (2021) 72 Cal.App.5th 563, 571 (*Strother*), quoting *People v. Carmony* (2004) 33 Cal.4th 367, 376–377.)

**B.** **The Recall and Resentencing Order Was Not Arbitrary or Irrational**

Applying these legal principles, we conclude the trial court did not abuse its discretion. The dismissal of enhancements more than halved Montoya's original sentence. She argues that the resentencing court abused its discretion by refusing to reduce the prison term further. Citing section 1191.1,[7] she argues statements made by the victim's family "are only relevant if they concern the 'safety of the victim, the victim's family, and the general public.' (Cal. Const. art. 1, § 28, subd. (b)(16).)" She argues that the court "afforded more weight to the continued emotional loss experienced by the victim's family than [Montoya's] exceptional rehabilitative progress and, thus, irrationally put emotion over reason." Montoya asserts the court should have only considered "that 'information relative to the circumstances of the crime and the convicted person's life and characteristics[ ]' [citation]."

As Montoya acknowledges, section 1191.1 permits the victim's next of kin to participate in sentencing proceedings and "express . . . their views concerning the crime . . . ." The statute states that the court "shall" consider these statements "in imposing sentence . . . ." (*Ibid.*) While it is true that Guerrero's

---

[7] "Section 1191.1 codified the Victims' Bill of Rights and requires that the victim or a family representative be notified of all sentencing proceedings and be given an opportunity to appear and express views concerning the crime." (*People v. Mockel* (1990) 226 Cal.App.3d 581, 586.) "The statute *mandates* that the court consider the victim's statement" (*ibid.*, italics added), or if the victim has died, the statement of the victim's next of kin. (§ 1191.1 [court, "in imposing sentence *shall* consider the statements of . . . next of kin made pursuant to this section . . . ," italics added].)

10

family members expressed their feelings of loss, they also provided the court with information about the circumstances of the crime. Their testimony showed that Montoya participated in the targeting and murder of an innocent, 22-year-old member of the public. Because Guerrero was randomly murdered, he did not have the opportunity to serve as a law enforcement officer as he hoped. The testimony of family members illustrated the senselessness of the crime for which Montoya was being punished and need to deter similar crimes.

Montoya concedes that "punishing the defendant" is a proper sentencing objective,[8] and it is apparent from the record that the trial court examined this factor closely. Dismissal of the enhancements reduced Montoya's sentence by more than 50 percent, the court observed, which left for determination "whether or not 13 years in prison from the time that she was arrested to today's date is enough to pay for the murder of an innocent young man."[9] The court answered this question in the negative.

---

[8] Punishment as a sentencing objective is well-grounded in California law. (See Cal. Const., art. I, § 28, subd. (5) [victims have a "right to expect that persons convicted of committing criminal acts are sufficiently punished in both the manner and the length of the sentences"]; § 1170, subd. (a)(1) ["the purpose of sentencing is public safety achieved through punishment, rehabilitation, and restorative justice. . . ."]; Rule 4.410(a)(2) [objectives of sentencing include "[p]unishing the defendant"].)

[9] Punishment is often described as making defendants "pay for" their crimes, and we understand that to be the resentencing court's meaning. (See, e.g., *People v. Valenzuela* (1995) 40 Cal.App.4th 358, 365 [provisions of sentencing law "exist to punish according to culpability;" the defendant killed two victims, and "the trial court should have the discretion to make [him] 'pay' for both deaths"].)

11

The resentencing court explained that the facts presented to the jury indicated that she "was part of the planning, preparation and implementation of this murder." She drove to Guererro's home knowing her confederate was armed with a rifle, approached their targets "in a stealth manner," and "used the element of surprise to murder this poor young man and injure the two others who were present." She drove away with the shooter as Guererro lay dying. Montoya worked for a business that painted over gang graffiti, permitting the inference that she used the position as a cover for her participation in gang-related activities, including the murder. She kept her role in the killing secret for more than a year.

The resentencing court also considered the mandatory factors described in section 1172.1, subdivision (a)(5), as indicated by its recognition that Montoya had "made positive changes in her life in an effort to set her up for success when released." Indeed, it commended her efforts and her acceptance of responsibility, as do we. However, the resentencing court was not obligated to make its decision based solely upon her exemplary record while incarcerated. The court weighed all the sentencing factors before it, which we do not reweigh. (See *People v. Scott* (1994) 9 Cal.4th 331, 355 [reviewing courts do not reweigh sentencing factors].) After considering the record before it, the court stated that it understood its discretion and would not exercise it.

Montoya fails to show that no reasonable court would decline to reduce her sentence to less than 25 years to life as punishment for her part in the planned murder of an innocent, 22-year-old man. That is the minimum base term for first degree murder (§ 190, subd. (a)) and is not inconsistent with the base

12

terms imposed for similar crimes.  (See, e.g., *People v. Sepulveda* (2020) 47 Cal.App.5th 291, 297 [25 years to life base term for premeditated first degree murder where defendant shot someone he believed to be part of a rival gang]; *People v. Beckley* (2010) 185 Cal.App.4th 509, 512 [25 years to life base term for first degree murder where defendant shot victim from a vehicle in retaliation for earlier fist fight].)  On this record, the resentencing order was not arbitrary or irrational.

## DISPOSITION

The resentencing court's order is affirmed.

MORI, J.

We concur:

COLLINS, Acting P. J.

**DAUM, J.

---

**       Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

13